STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. JOSEPH LINARDUCCI, JR., PLAINTIFF IN ERROR.

Argued May 3, 1938—Decided January 24, 1939.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the plaintiff in error, *J. Henry Harrison* and *Samuel I. Kessler.*

For the state, *Anthony M. Hauck, Jr.,* assistant attorney-general.

PER CURIAM.

Plaintiff in error was convicted upon an indictment charging that, on September 8th, 1937, at the City of East Orange,

in the County of Essex, he "did cause the death of Douglas Strowe and Winnie De Voe by driving a motor vehicle carelessly and heedlessly in willful and wanton disregard of the rights and safety of others," contrary to section 2:138-9 of the Revised Statutes of 1937; and he sued out this writ of error to review the judgment entered thereon. The entire record of the procedings had upon the trial has been returned with the bill of exceptions, under section 2:195-16 of the Revised Statutes, *supra*.

*Point I:* The first question raised by the assignments of error and the specification of causes for reversal concerns the propriety of an instruction.

After the jury had deliberated upon the case, they requested further instructions. This colloquy occurred:

"Juror No. 10: In regard to the law as to the right of way of a pedestrian over an automobile when a pedestrian is crossing on the crosswalk——

"The court: Yes.

"Juror No. 10: ——you said that the automobile must yield the right of way or the driver must keep his car under control so as to be able to yield the right of way to the pedestrian when their paths are convergent. The fact that the driver may not see the pedestrian has no effect on his guilt under the law?

"The court: I think this is the answer to your question. It was the duty of the driver of this car as he approached the crossing at Hollywood Avenue to have his car under such control, both as to speed and as to observations of the conditions existing upon the highway, as to be able to reduce his speed and to give pedestrians a reasonable opportunity to pass in safety if that pedestrian was approaching the crossing at the same time and in such a manner that if both continued their respective courses there was likely to be a collision."

It is said that this instruction was "not responsive to the juror's question;" that it was "definitely misleading;" that it "completely ignored the theory of the defense and that portion of the testimony to which the juror's question was directed;"

that it placed "a lessor burden of proof upon the state than the law requires, and that it is an incorrect statement of the law as contemplated by the juror's question." Defendant had testified that he was blinded by the headlights of an automobile that turned into Central Avenue from an intersecting street, and therefore did not observe the presence of the victims upon the roadway; and the argument is made that what the trial judge said was "tantamount to an instruction that if the defendant did not see the pedestrians—regardless of what reason prevented him—he was guilty."

We do not regard the criticism thus made as well founded.

The trial judge did not say that guilt could be predicated upon a mere failure to "see the pedestrians." Rather, he charged the duty laid by the Traffic Act (*Pamph. L.* 1928, *pp.* 721, 728; *R. S.* 1937, 39:4-35; 39:4-36) upon the driver of an automobile approaching an intersection; and so he laid down a standard that plainly excluded the circumstance of mere failure to see the victims as conclusive of guilt.

Evidently, the point of the juror's inquiry was the effect of defendant's failure to see the pedestrians on the crosswalk as regards the right of way provision of the Traffic Act, *supra;* and the trial judge, without more, stated what it is conceded was the duty imposed by the Traffic Act, *supra,* upon the vehicular operator approaching such a crossing. He did not express the view, nor was it reasonably to be implied, that defendant's failure to see the victims of the fatality conclusively demonstrated that he disregarded his duty under the Traffic Act, *supra,* and was therefore guilty of the offense charged. The juror seemed to be satisfied with the answer thus given. As pointed out, it is conceded that it correctly stated the duty which the law imposed upon the defendant; and if defendant deemed elaboration necessary to include a point not covered, an appropriate request for further instructions could have been interposed.

This instruction must of necessity be viewed in the light of the whole charge; and, so considered, we find it to be unexceptionable. We have read the charge and the colloquy between the court and the jurors, following the jury's request

for further instructions; and we find the charge, viewed in its entirety, to be a clear exposition of the issues and the applicable legal principles, with due observance of defendant's rights and all the safeguards of his liberty set up by the law.

The jury were instructed, in language plain and unambiguous, that the evidence must satisfy them beyond a reasonable doubt that defendant "was guilty of gross or criminal negligence so as to amount to a willful intent on the part of the defendant to do injury, or a wanton and reckless disregard of the rights and safety of others;" that mere carelessness or negligence "is not enough;" that driving the vehicle in violation of the Traffic Act, *supra,* "does not mean that he drives his car carelessly and heedlessly in willful or wanton disregard of the rights or safety of others to the extent that because he is guilty of such a violation of the law he would be guilty of the charge laid in this indictment;" and that the operation of the vehicle in violation of that act may be considered "in determining whether or not his driving was in the careless and heedless manner prohibited by the statute under which this indictment is drawn."

Moreover, in answer to a question interposed by another juror shortly before, the trial judge said: "These [regulations laid down by the Traffic Act] are merely rules to be considered in determining whether or not the defendant is guilty of driving in the careless and heedless manner described in the indictment." A reading of the entire colloquy between the court and the jurors (several questions were directed to the court) reveals a careful statement of the pertinent principles, and leaves no doubt that the instructions so given were entirely consistent with the main charge, and not reasonably open to misunderstanding. See *State* v. *Dugan,* 84 *N. J. L.* 603.

*Point II:* Another juror inquired as to the duty of a motor vehicle operator confronted with "some special hazard" as he approached a highway intersection. The juror did not specify the "special hazard" he had in mind—in fact, he said in answer to the court's interrogation, "I don't care to state it"—and the trial judge properly, as we conceive it, repeated the instruction dealt with under point I.

It is contended that the "blinding lights" referred to constituted a "special hazard," and the instruction therefore was "a wholly inadequate response to the question in the mind of the juror, and was misleading to the jury."

The juror refused to state the hazard he had in view, and, in such circumstances, the trial judge could not do more than he did. It is not contended that the main charge was deficient as regards the evidence relating to "blinding lights." The judge could not deal with an undisclosed situation that, in the juror's mind, constituted a "special hazard."

*Point III:* It is said that the trial judge committed prejudicial error in refusing to charge the following request made by defendant:

"The denial by the court of motions made by counsel in this case, is not to be taken as prejudicing the defendant but is based solely on matters of law addressed to the court, and should not enter into your consideration of the case."

This request was denied on the ground that "neither of the motions for a directed verdict was disposed of in the presence of the jury."

In view of the instructions that the "presumption of innocence continues throughout the case until the State" had proved guilt beyond a reasonable doubt, and that the jury are the sole judges of the facts, and should not be influenced by the "recollection of the facts" given by the court or counsel which "differs" from their own, we are of the view that the denial of the request worked no prejudice, especially in view of the fact that the principal motions to direct a verdict for defendant were not made in the presence of the jury.

*Point IV:* The next point made is that the trial judge, in his charge, "gave undue prominence to particular phases of the testimony and of the law applicable to the case," and thereby misled the jury into the belief that these particular phases of the case were controlling in the determination of defendant's guilt.

The insistence is that undue prominence was given to the provisions of the Motor Vehicle and Traffic Acts. There is no contention that "the statements of the court, in them-

selves," asserted an incorrect principle or rule of law, but it is urged that "the stressing of these statutory standards of conduct" was prejudicial.

We find the criticism to be without substance. The significance of such statutory violations was clearly stated; they were circumstances to be considered in determining the principal issue, and that issue, it is conceded, was stated in language that could not mislead. What the trial judge said respecting the provisions of these statutes, after the jury came in for further instructions, was in response to questions put by the jurors; and there is no reasonable basis for the contention that the matters so dealt with were unduly stressed. The instructions so given are to be viewed in the light of the whole charge which, as we have pointed out, correctly stated the fundamental issue and the applicable legal principles. See *Belperche* v. *Erie Railroad Co.*, 111 *N. J. L.* 81. We find no basis for the claim that the jury were thereby misled.

*Point V:* The next insistence is that there was error in permitting certain witnesses to give their opinion as to defendant's sobriety. The specific ground of objection was that the witnesses "made either no observation of the defendant, or an observation which was insufficient to permit them to form any opinion of the defendant's condition of sobriety."

We have read the testimony of all these witnesss; and it suffices to say that in each case there was evidence of observation of defendant sufficient to enable the witness to form an opinion as to his sobriety. Under the circumstances, defendant was entitled to no more than a submission to the jury of the question of whether the witness had made an observation sufficient to justify the opinion expressed; and this course the court pursued.

*Point VI:* The trial judge charged that, if the testimony of one of the state's witnesses, Miss Mathews, "is to be believed, the children were at or upon the crosswalk in the middle of the street at the time they were struck;" and this is criticised as "an incorrect statement of both the law and the evidence," and "definitely misleading to the jury." This point is not well made.

The observation thus made cannot be classed as unfair comment. It was reasonably inferable from the witness' testimony that the deceased were upon the crosswalk when struck; at least, she so testified.

But even though the contrary view be entertained, the comment so made cannot be classed as reversible error. The trial judge made clear to the jury that his recollection of the evidence was not controlling upon them, and that in appraising the evidence their own recollection of the facts should govern. The determination of the disputed facts was not withdrawn from the jury. See *State* v. *Hauptmann,* 115 *N. J. L.* 412; *State* v. *Kaskevich,* 98 *Id.* 23.

*Point VII:* It is next insisted that the trial judge erroneously charged the jury with reference to the location of the crosswalk at the particular intersection. It is said that the instruction was "not in accordance with the statute."

The highways did not intersect at right angles; and the trial judge, in response to an inquiry of a juror, sought, with the aid of the map introduced into evidence, to locate the crosswalk. So far as we can determine from the instruction itself, it did not contravene the statute. And when considered in the light of other instructions relating to the crosswalk, there would seem to be no basis for the claim of error. The instructions, as a whole, seem to have followed the requirements of the statute. *Pamph. L.* 1928, *pp.* 721, 728; *R. S.* 1937, 39:1-1, 39:4-34, 39:4-36. See *Clarkson* v. *Ley,* 106 *N. J. L.* 380; *Ferris* v. *McArdle,* 92 *Id.* 580.

Moreover, the error claimed was not such as to work substantial injury to defendant, and therefore would not justify a reversal.

*Point VIII:* It is urged that the verdict was contrary to the "greater weight of the evidence."

Under this head, it is also argued that there was error in the denial of the motions to direct a verdict of acquittal, at the close of the state's case and at the close of the whole case.

Plainly, the evidence presented an issue for the jury. We deem it unnecessary to review it. It suffices to say that our examination disclosed evidence of disabling intoxication; and

the weight to be accorded it was peculiarly within the province of the jury. There was also evidence of the movement of the automobile at great speed in a busy thoroughfare, and in such a heedless and reckless manner as to menace the lives and safety of users of the highway, particularly at the crosswalk adverted to. The severe physical injuries suffered by the deceased and the damage to the automobile all testify to a reckless speed. Thus there was evidence that, if believed, clearly pointed to guilt of the offense charged in the indictment.

A verdict is not to be set aside on error as against the weight of the evidence, under chapter 349 of the laws of 1921 (*Pamph. L., p.* 951; *R. S.* 1937, 2:195-19), unless it clearly appears that it is the product of mistake, passion, prejudice, or partiality. The function of determining whether the guilt of the accused has been established beyond a reasonable doubt rests with the jury, and the statutory authority thus to review the evidence was designed to correct injustice resulting from a plain and obvious failure of the jury to function within its allotted sphere. *State* v. *Hauptmann, supra; State* v. *Karpowitz,* 98 *N. J. L.* 546; *State* v. *Woodworth,* 121 *Id.* 78.

*Point IX:* Lastly, it is maintained that the court erroneously refused to charge the jury as requested by the defendant, and erroneously charged the jury, with respect to the weight to be given the various witnesses on the question of intoxication. We find no error in these respects.

The gist of the argument is, that by the course thus pursued, the jury was "permitted to throw out entirely the testimony of the doctors and of the police officers" as to defendant's "sobriety or intoxication," and to "accept instead, the opinions of the lay witnesses, based upon a meagre observation of facts;" and that the jury should "have been instructed either to give the opinions of these doctors and police officials greater weight than the opinions of the lay witnesses, or that they should have been instructed, as requested, that they had the right to give such opinions a greater weight."

We consider that the charge, viewed as a whole, made clear to the jury its "right" to give such expert testimony, so called,

greater weight than that voiced by the lay witnesses, if that course were warranted under the circumstances. The jury were correctly advised as to the principles governing the appraisement of the evidence. In this connection, it is to be noted that the physicians did not make their respective examinations until some time after the arrest of defendant, and that the delay was a circumstance to be taken into consideration by the jury in assaying their conclusions.

It follows therefore that plaintiff in error was deprived of no substantial right in the particulars mentioned.

The judgment is accordingly affirmed, with costs.