34 N.J. Super. 172 (1955)
111 A.2d 789
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AUGUST BATZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 7, 1955.
Decided February 15, 1955.
*173 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank A. Dolan argued the cause for appellant (Messrs. Mackerley & Friedman, attorneys; Mr. Peter Friedman, of counsel).
Mr. Wilbur M. Rush, Warren County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
The magistrate of the Municipal Court of the Town of Hackettstown at a trial on August 18, 1954 resolved that the defendant was guilty of having operated a motor vehicle on August 1, 1954 while under the influence of intoxicating liquor in violation of N.J.S.A. 39:4-50. At an appellate trial de novo the judge of the Warren County Court reached the same conclusion. The defendant having previously committed a like offense, he was necessarily subjected to the statutory penalty of imprisonment.
The judgment of the County Court brought here for appellate review (State v. Hunter, 12 N.J. Super. 128 (App. Div. 1951)) is said by the defendant to have been unwarranted because the evidence adduced by the State failed to establish the truth of the accusation beyond a reasonable doubt (State v. McCarthy, 30 N.J. Super. 6 (App. Div. 1954)), and that the conviction of the defendant was contrary to the weight of the evidence.
The scope of our appellate consideration of the evidence is defined in State v. Rowe, 116 N.J.L. 48, 57 (Sup. Ct. 1935), affirmed 122 N.J.L. 466 (E. & A. 1939); State v. *174 Myers, 136 N.J.L. 288, 290 (Sup. Ct. 1947); State v. Matchok, 14 N.J. Super. 359 (App. Div. 1951); State v. Witter, 33 N.J. Super. 1, 7 (App. Div. 1954).
In general, the present case is to be enrolled in that constantly increasing company of such cases in which the accused always modestly acknowledges that he "had only two beers," and explains that his demonstrations of intoxication must have been occasioned by the anti-histamine, narcotic, or sedative tablets or capsules which had been consumed in obedience to the directions of a physician. Mysterious, indeed, seem to be the averred reactions to the various drugs mentioned in these cases when any one of them is intermixed with the customarily acknowledged intake of two beers.
In this instance the medication was said to be an antihistamine known as Co-pyrinal, which had been prescribed to alleviate the defendant's allergy to sumac poisoning. The infusion is said to have caused the defendant to be so contentious and belligerent upon his departure from the tavern and his apprehension by the police, as courageously to boast that "there was no officer in Hackettstown big enough to take him out" of his car. The dutiful police officer to whom the pretentious proclamation was addressed testified that the defendant delivered it with a voice "fluent" (sic) with the odor of alcohol.
Strangely, too, it did not occur to the defendant to mention the medication either to the policemen or to the physician who examined him.
In the circumstances it seems probable that his memory may have been likewise faulty in calculating the number and the percentage of the alcoholic potency of the drinks he actually consumed. At his examination by Dr. Miller he subjectively explained that he had been treated for "stomach trouble, family troubles and nerves," which symptomatology he admitted when in a more rational state of mind at the trial had been a misrepresentation.
There was testimony that the defendant was belligerent rather than submissive; loquacious, not taciturn; excited, *175 instead of lethargic; his enunciation unnatural; his eyes inflamed; his mouth was not dry but to the contrary an excessive quantity of saliva was exuding from it; his breath carried a noticeable odor of alcohol; his muscular powers of locomotion were temporarily denaturalized. Were those conditions the effects of the medicinal sedative, if such was taken, or of the consumption of alcohol, or perchance of both? Assuredly this was a factual question, the solution of which required the determination of a variety of inferential circumstances.
Supposing the reactions to have been the effects of the synthesis of the drug and the alcohol (maybe a little more than contained in two beers), the trial judge was doubtless acquainted with the decisions in State v. Glynn, 20 N.J. Super. 20 (App. Div. 1952) and in State v. Rodgers, 91 N.J.L. 212 (E. & A. 1917).
Perhaps irrelevantly one wonders why, with previous knowledge of the effect of the capsule as represented by the defendant at the trial, he chose to float it into his stomach on top of an alcoholic beverage. Compare State v. Gooze, 14 N.J. Super. 277 (App. Div. 1951).
We have examined the testimony of the police officers Hill and Vreeland, descriptive of the conduct and demeanor of the defendant at the time of his arrest, and that of Dr. Miller explanatory of his examination of the defendant and resultant diagnosis in a contrastive relation to the testimony of the defendant and of his witnesses, and we conclude that the trial judge, after the entire comparison and consideration of all of the evidence, could have rationally acquired an abiding conviction to a moral certainty of the truth of the charge.
But our attention is invited to an occurrence following the trial which counsel for the appellant insists positively demonstrates that the trial judge did have despite his decision a reasonable doubt of the defendant's guilt. The demonstrative event is said to be the issuance by the trial judge, who heard the case without a jury, of a certificate of reasonable *176 doubt pursuant to R.R. 1:4-4, by virtue of which action the defendant was admitted to bail pending the determination of the present appeal.
The rule has its ancestry in the statutory supplement to the Criminal Procedure Act in 1927 (L. 1927, c. 125, § 5, p. 235) and the amendments of 1930 (L. 1930, c. 124, § 1, p. 386) and of 1932 (L. 1932, c. 77, § 1, p. 135), under which the admission to bail of a convicted defendant has been successively regulated for more than a score of years. True, the certificate has conformably contained the declaration "that there is reasonable doubt of the validity of the conviction."
A petition for admission to bail under the provisions of the 1927 act was considered in State v. Baer, 6 N.J. Misc. 29 (Q. Sess. 1928). In 1947 the subject was considered in State v. DeFalco, 25 N.J. Misc. 140, 142 (Q. Sess. 1947), wherein it is stated:
"* * * Strictly speaking, the doubt as to the validity of the conviction, which will cause the trial court to issue the certificate, is not the doubt in such court's own mind of the validity of its own action at the trial, but whether there is a reasonable doubt in its mind as to the fact that the appellate courts will sustain `the validity of the conviction.'"
To so literally interpret the object and purpose of the present court rule derived from the prior legislative enactments and the practice thereunder as to resolve that now a trial judge who has heard and who himself without a jury has convicted a defendant of a crime or quasi-criminal offense is obliged either to deny the defendant bail pending appeal or effectually to nullify his judgment, would barbarize the intended import of the rule. The appellant's point is adroitly argumentative but essentially capricious.
The judgment of conviction is affirmed.