37 N.J. Super. 379 (1955)
117 A.2d 404
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK OLIVER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 3, 1955.
Decided October 18, 1955.
*380 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank G. Schlosser argued the cause for appellant (Messrs. Mackerley & Friedman, attorneys).
Mr. Vito A. Concilio, Sussex County Prosecutor, argued the cause for respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
There are perhaps few disasters that arouse a larger variety of human emotions than the untimely death of a six-year-old school boy who in crossing the highway from the bus to his home is struck down by a passing motor vehicle. Among those natural excitations, profound sympathy and bitter resentment are often in balance.
In the present instance Herman Pruser IV was the six-year-old boy. Frank Oliver was the driver of the motor vehicle. The fatal mishap occurred at about 1:00 P.M. on April 9, 1954 on the Sparta-Newton Highway in the Township of Andover, Sussex County.
The grand jury of the county presented an indictment against the driver Frank Oliver, charging him with offending *381 the statute, N.J.S. 2A:113-9, in that (first count) he operated his automobile carelessly and heedlessly, in wanton disregard of the rights and safety of others, and (second count) he drove his vehicle in willful disregard of the rights and safety of others.
At the ensuing trial the jurors resolved that the defendant was guilty of the commission of the offense alleged in the first count and not guilty of that charged in the second count. The defendant appeals from the judgment of conviction.
Initially it is imperative to comprehend the essential elements of the crime for the commission of which the defendant was accused. Some of the relatively recent informational decisions are State v. Linarducci, 122 N.J.L. 137 (Sup. Ct. 1939), affirmed 123 N.J.L. 228 (E. & A. 1939); In re Lewis, 11 N.J. 217 (1953); State v. Gooze, 14 N.J. Super. 277 (App. Div. 1951); State v. Shoopman, 20 N.J. Super. 354 (App. Div. 1952), affirmed 11 N.J. 333 (1953); State v. Elliott, 23 N.J. Super. 311 (App. Div. 1952), certification denied 12 N.J. 247 (1953); State v. Feldman, 30 N.J. Super. 600 (Cty. Ct. 1954).
Wisely may we borrow the laconic but trenchant language of Mr. Justice Brennan in the Lewis case, supra, 11 N.J., at page 222: "The emphasis is upon the reckless indifference to consequences of the intentional act of driving the motor vehicle in the face of known circumstances presenting a high degree of probability of producing harm." We italicize the words expressive of the essential components of the criminal offense.
The distinction between the circumstantial elements of a civil tortious wrong and those necessary to constitute the penal offense must be recognized. Mere negligence is not wantonness within the import of the statute. Vide, State v. Diamond, 16 N.J. Super. 26 (App. Div. 1951); King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951).
In the following narrative we impart the significantly material circumstances accompanying and surrounding the occurrence of the misfortune which we, of course, derive from the transcription of the evidence.
*382 The defendant is a textile salesman and evidently a resident of good repute in the City of Paterson. At about 11:30 on the morning of April 9, 1954, accompanied by his brother Fred and by his attorney Charles Turndorf, a member of the bar of this State, he departed from Paterson to attend a corporation business meeting in the afternoon at East Stroudsburg, Pennsylvania. He was the owner and driver of a Cadillac automobile, a circumstance which the prosecutor did not fail to accentuate at the trial. All three occupied the front seat, with Mr. Turndorf seated in the middle.
As the hour of 1 o'clock in the afternoon approached, the defendant and his companions were riding on the macadam highway leading from Sparta to Newton. Evidently the school bus, followed by a large passenger bus operated by Northeast Coach Lines, had preceded them on the highway, likewise in the direction of Newton. Some 500 feet distant from the scene of the accident there is an ascension in the highway which overpasses the tracks of the Lehigh and Hudson River Railroad Company.
It is the acknowledged fact that shortly before the defendant had ascended the elevated overpass the school bus in which the boy Herman and other pupils were passengers came to a stop on the northerly side of the highway to enable Herman to alight and cross the road to his home. Alas, the passenger bus came to a stop closely behind the school bus, leaving a distance of probably not more than 20 feet between the two buses.
Unfortunately, too, the passenger bus had no rear window. The driver of the school bus explained that before opening the door of his bus he endeavored to ascertain whether there were any vehicles approaching in a westerly direction but that the presence of the passenger bus completely obstructed his vision.
Upon arriving at the crest of the overpass the defendant as well as his companions observed the standing passenger bus but in the circumstances none of them saw the obscured school bus until their car was passing about midway opposite the passenger bus when Fred shouted "Look out, school bus!" *383 The defendant immediately applied the brakes of his vehicle, but the boy almost simultaneously emerged from in front of the school bus and was struck by the right front light of the defendant's automobile.
The skid marks on the surface of the highway indicated that the brakes on the defendant's car were vigorously applied, yet there was no credible and competent evidence that the defendant was operating his vehicle at an unlawfully excessive rate of speed. Indeed, the most logical inference is that he was travelling at a speed of approximately 40 miles an hour.
True, the defendant did not sound the horn of his car, nor did he see the boy until the instant of the collision. The testimony supports the fact that the defendant's vision was not for any reason at the critical time diverted from the observation of the conditions existing on the highway in front of him.
It was not made evident, for example, that the defendant was knowingly afflicted by any pathological disease which might at any time occasion a period of unconsciousness and nevertheless persisted in driving a motor vehicle. Cf. State v. Gooze, supra. Nor that the defendant had previously imbibed a quantity of intoxicating liquor, not even the familiar quantity of "two beers." Cf. State v. Elliott, supra. Nor that the defendant was driving at an unlawful rate of speed. Cf. State v. Feldman, supra. Nor that the defendant was voluntarily operating his vehicle while under the influence of incapacitating drugs. Cf. State v. Batz, 34 N.J. Super. 172 (App. Div. 1955), certification denied, 18 N.J. 279 (1955).
The evidence clearly reveals that this gravely unfortunate accident in reality occurred as a result of the fateful synchronism, the coincidence and contiguity in time and place of the concurrently existing circumstances actually unforeseen by the defendant. Perhaps the defendant should have been more contemplative and anticipatory of some possible risk in passing the obvious passenger bus, but in so doing it cannot be reasonably asserted that his conduct in that respect *384 exhibited a conscious, reckless, and foolhardy indifference to the cogent probability of consequential harm and injury to another.
The jury acquitted the defendant of the charge of willfully careless and heedless conduct. The situation of the witness Marsh upon whose testimony the State so heavily relied, when viewed in contrast to the situation of the defendant, clearly illustrates the particular consideration of important significance in cases of this nature. That witness had foreknowledge, that is, a conscious awareness from his experience in travelling along this section of the highway, that the Pruser boy among others was a half-day morning pupil who was regularly transported to his home by the school bus at about 1:00 P.M.
In the present case there was no evidence adequately to establish beyond a reasonable doubt that the defendant was conscious and aware of existing conditions of probable danger to others if he proceeded on the highway and nevertheless with that consciousness persisted in driving his car onward with wanton indifference to and disregard of the safety of others within the purview of the statute. Moreover in that state of the evidence we are persuaded that the conviction of the defendant was either improperly responsive to the emotional influences of sympathy and resentment or to a mistaken understanding of the essential elements of the crime with which the defendant was charged.
We conclude that the judgment under review was unwarranted by the evidence and it is therefore reversed.