STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. MALCOLM D. MILLIGAN, A/K/A DOUGLAS MILLIGAN, DEFENDANT-RESPONDENT.

Argued March 18, 1986—Decided September 29, 1986.

*Steven E. Braun*, Assistant Prosecutor, argued the cause for appellant (*Joseph A. Falcone*, Passaic County Prosecutor, attorney).

*Angelo R. Bianchi* argued the cause for respondent (*Bianchi and Casale*, attorneys).

*Gilbert G. Miller*, Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*W. Cary Edwards*, Attorney General, attorney).

PER CURIAM.

The judgment is affirmed, substantially for the reasons expressed in the opinion of the Appellate Division, reported at 202 *N.J.Super.* 336 (1985).

CLIFFORD, Justice, dissenting.

Relying on the painstaking opinion of the Appellate Division, *State v. Milligan*, 202 *N.J.Super.* 336 (1985), the Court holds that a criminal homicide in which the death of the victim is caused by reckless driving may be prosecuted only under *N.J. S.A.* 2C:11-5, the "death by auto" statute. According to both courts below, and now this Court, that proposition compels dismissal of the indictment against defendant for manslaughter in violation of *N.J.S.A.* 2C:11-4(b)(1). I think not.

I

Because the trial court granted defendant's motion to dismiss the manslaughter indictment, the evidentiary record consists only of the testimony and documents presented to the grand jury. That evidence tends to show that at around 9:30 or 10:00 a.m. on May 22, 1984, defendant began drinking at Murphy's Restaurant in Greenwood Lake, New York, where he had two twelve-ounce bottles of Beck's beer and two shots of Canadian whiskey. He left there sometime before 10:30 a.m. At about 11:30 a.m. he purchased three eight-packs of beer (seven-ounce bottles) at Art and Carol's Tavern in Hewitt, New Jersey, and departed shortly thereafter. We next pick up his trail at around 4:30 p.m., again at Art and Carol's where, after three more bottles of beer and three blackberry brandies, the proprietor endeavored to limit defendant's consumption to beer only. Defendant, apparently not reacting kindly to being refused any more brandy, thereupon threatened to visit violence on the proprietor (who did not take the threat seriously) and to remove his trade to another bistro, the Nineteenth Green. About twenty minutes after having been "cut off," defendant, visibly annoyed, left Art and Carol's. One patron offered to drive defendant home, and another asked defendant to let her drive him home, both of which offers defendant refused.

It was only minutes after his departure from Art and Carol's that defendant was involved in the fatal accident that resulted

in this prosecution. According to a witness who was driving behind defendant's truck as it proceeded in a northerly direction on Greenwood Lake Turnpike in West Milford, New Jersey, defendant moved from the right side of the road to the left and back about ten times before striking the victim's southbound automobile in the southbound lanes, in a "no passing" zone. The collision, which occurred at about 5:45 p.m., resulted in the death of the other driver.

The investigating police officer concluded that defendant had been drinking. Two breathalyzer tests, the first at 7:00 p.m. and the second at 7:11 p.m., produced readings of .18 and .19 respectively. A blood test subsequently administered at a local hospital yielded a reading of .203. According to the investigating officer, who was offered to the grand jury as an expert in "drinking and driving," defendant had to have consumed about 12.8 ounces of 86-proof alcohol to have produced the foregoing readings. The officer concluded that defendant was under the influence of alcohol at the time of the accident and could not have had the capacity to operate his truck safely.

## II

The New Jersey Code of Criminal Justice (Code) declares that when criminal homicide is committed recklessly, it constitutes the second-degree crime of manslaughter. *N.J.S.A.* 2C:11–4(b)(1), –4(c). At the time of the offense with which this appeal is concerned, death by auto—a criminal homicide caused by driving a vehicle recklessly—was a fourth-degree offense. *N.J. S.A.* 2C:11–5(a), (b). (It has since been elevated to an offense of the third degree, *L.*1984, *c.* 212.) The word "recklessly," which appears in both the "reckless manslaughter" and "death by auto" statutes, is defined in *N.J.S.A.* 2C:2–2(b)(3) as follows:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe

in the actor's situation. "Recklessness," "with recklessness" or equivalent terms have the same meaning.

The Appellate Division concluded that "the elements of reckless manslaughter and death by auto are therefore really identical where the instrumentality is a motor vehicle," 202 *N.J.Super.* at 339, and that the legislature intended death by auto to be a specific offense rather than a general one under the manslaughter statute, *id.* at 340. After a careful review of the pertinent cases that discuss the circumstances in which a specific statute (here, the "death by auto" statute) supersedes a general one (the manslaughter provision) that overlaps the same conduct, *id.* at 342–46, the court below concluded that in those instances in which, as here, the instrumentality of death is a motor vehicle, the legislature intended to preclude prosecutions under the manslaughter statute and to limit the State to a death-by-auto prosecution. The Appellate Division therefore affirmed the dismissal of the manslaughter indictment in this case "without prejudice to the State to seek an indictment under *N.J.S.A.* 2C:11–5." *Id.* at 352.

I see it a little differently. A statute that covers the same subject matter as is encompassed by earlier legislation does not automatically effect an implied *pro tanto* repeal of the earlier law. *See State v. DesMarets*, 92 *N.J.* 62, 76 (1983); *State v. Gledhill*, 67 *N.J.* 565 (1975); *State v. States*, 44 *N.J.* 285 (1965); N. Singer, 1A *Sutherland Statutory Construction* § 23.10 (Sands 4th ed. 1985) (hereinafter *Sutherland* ). On the contrary, there is a "strong presumption" against such an implied repeal, *City of Camden v. Byrne*, 82 *N.J.* 133, 154 (1980), and that presumption will be overcome only by proof beyond a reasonable doubt that the legislature intended a negation of the prior law. *Swede v. City of Clifton*, 22 *N.J.* 303, 317 (1956). As this Court said in *State v. States, supra,*

[t]he mere fact that two statutes overlap in prohibiting the same act does not mean that the later law automatically repeals the earlier one *pro tanto*, or that an alleged offender can be prosecuted only for the more serious offense. Repeals by implication are not favored and it is a cardinal rule of statutory construction that both laws should be given effect if reasonably possible. It is

not sufficient merely to show that a subsequent act covers some of the cases encompassed by the earlier one. The legislative intention to repeal must be manifest; the language must admit of no other reasonable interpretation. [44 *N.J.* at 291.]

Thus, the intent of the legislature to effect an implied repealer of a prior statute "will not arise by implication unless the subsequent statute is plainly repugnant to the former and is designed to be a complete substitute for the former." *State v. Drake,* 79 *N.J.Super.* 458, 461–62 (App.Div.1963). Two statutes are said to be "repugnant" only if it is "impossible to give the two concurrent operative effect." *State v. Gledhill, supra,* 67 *N.J.* at 580. In doubtful cases, the later statute "is strictly construed to effectuate its *consistent* operation" with prior law, *Sutherland, supra,* § 23.10 (emphasis in original), and our duty is to reconcile the two enactments to the extent possible.

I do not view the enactments before us—the "death by auto" statute and the manslaughter statute—as being so plainly "repugnant" to each other as to compel the conclusion beyond a reasonable doubt that the legislature intended the "death by auto" statute to work a repeal of the manslaughter statute in vehicular homicide cases. The legislative history would strongly suggest the opposite conclusion. The fact that the "opposite conclusion" is not reached by the majority of this Court, however, emboldens me to make the somewhat presumptuous observation that the legislature might wish to review the bidding to make its intention unmistakable to those who do not share my view of the matter.

As I read the legislative history the original "death by auto" statute, *L.*1935, *c.* 282, was prompted by the fact that under the common law all recklessly-caused homicides were punishable as manslaughter, *see II Final Report of the New Jersey Criminal Law Revision Commission* 158 (1971) (Code Commentary); *cf. State v. Blaine,* 104 *N.J.L.* 325, 327 (E. & A.1927) (whether killing is manslaughter *per se* when death of person is attributable to "unlawful act" of driving while intoxicated is "not so clear"), and therefore grand juries were reluctant to indict and

petit juries were loathe to convict some defendants despite the fact that they plainly had committed reckless vehicular homicide. See Tischler, "Recent Crime Laws of New Jersey," 58 *N.J.L.J.* 417, 423 (December 19, 1935) ("[I]n cases of 2800 drivers who were connected with fatal accidents only 252 indictments for manslaughter were found, of which 182 were never moved; and of 25 indictments brought to trial 13 resulted in convictions, 11 in acquittals, and 1 in a disagreement.").

The legislature sought to overcome this tendency towards jury nullification by creating a separate offense dealing with vehicular homicides, for the conviction of which a lesser penalty than that called for by a manslaughter conviction would be imposed. See *28th Annual Report of the Commissioner to the Legislature for the Year 1933* (State Library 974.901 M71), *cited in State v. Donley*, 85 *N.J.Super.* 127, 134 (App.Div.1964). It is that policy—the facilitating of indictments and convictions—that gave birth to chapter 282 of the Laws of 1935 and that has persisted as a general motivating force throughout the various amendments to and reenactments of the "death by auto" statute, including its formulation in the Code.

This is not to say, however, that the legislature intended that under circumstances such as those suggested by the evidence presented to the grand jury in this case, a prosecution had to be limited to one for death by auto, with no opportunity for the jury to consider reckless manslaughter. As I view the statutory scheme, when the instrumentality of death is a motor vehicle, death by auto is a lesser-included offense of reckless manslaughter, as it is, indisputably, of aggravated manslaughter. See *N.J.S.A.* 2C:11–4(a) ("Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life."). According to the Code, when the same conduct of a defendant may establish the commission of more than one offense, a defendant may not be convicted of more than one offense if one is "included" in the other. *N.J.S.A.* 2C:1–8(a)(1). An offense is included in the offense charged when "[i]t is

established by proof of the same or less than all the facts required to establish the commission of the offense charged * * *." *N.J.S.A.* 2C:1–8(d)(1). A death-by-auto conviction may be based on proof of "less than all the facts required to establish the commission of [manslaughter.]"

In the instant case even though the element of recklessness is common to both causing death by auto and reckless manslaughter (as, again, it is to aggravated manslaughter), the evidence that would satisfy the requirements of proof for a conviction of death by auto would fall short of the proof required to sustain a reckless manslaughter conviction. Standing alone, the reckless driving of an automobile, resulting in the death of another, satisfies all of the requirements for a violation of the "death by auto" statute. I would conclude that reckless manslaughter would be established only in the event of proof of additional acts of recklessness, beyond the mere driving of a motor vehicle in a reckless manner, that were a cause of the victim's death—causative acts of recklessness different in kind from, although not necessarily more egregious than, that involved in reckless driving. If that sort of proof were forthcoming, a manslaughter charge would be a legitimate option; if it were successfully established, then death by auto would become a lesser-included offense within the statutory definition—that is, death by auto would be "established by proof of * * * less than all the facts required to establish" manslaughter. *See N.J.S.A.* 2C:1–8(d)(1); *State v. Dively,* 92 *N.J.* 573 (1983). In short, I see reckless manslaughter as encompassing reckless conduct quantitatively greater than the recklessness contemplated in a death-by-auto charge and qualitatively less than the recklessness required to support an aggravated manslaughter case.

The point I seek to make was addressed by the Court in *Dively.* There the defendant, while intoxicated, drove his vehicle across the center line of the highway and struck an oncoming automobile, causing the death of the other driver. 92 *N.J.* at 576. Dively pleaded guilty in the municipal court to

drunk driving, into which the charges of reckless driving and failure to keep to the right were merged. *Ibid.* Thereafter the grand jury indicted Dively for causing death by auto, *id.* at 577. The issue was whether the earlier municipal court conviction imposed a federal double jeopardy bar to the later death-by-auto prosecution.

In determining that the second prosecution was barred, the Court's approach was to ask whether the greater offense (death by auto) included the lesser (the municipal court infractions), for if it did, then under "the settled law of this State" a "prosecution for either bars a subsequent prosecution for the other * * *." *Id.* at 580. The answer lay in a two-pronged analysis, calling for a comparison of the offenses, as set forth in *Illinois v. Vitale,* 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980). The first prong, the "sameness" of elements of the offenses, led the Court to conclude that the lesser offense "require[d] no proof beyond that which is required for conviction of the greater—death by auto." *Id.* 92 *N.J.* at 582.

[T]he greater offense is by definition the "same" for purposes of double jeopardy as any lesser offense included in it. Every death by auto under *N.J.S.A.* 2A:113-9 necessarily *includes* a finding of reckless driving, and any prosecutor who has established reckless driving need prove only the resulting death in order to establish death by auto. [*Id.* at 582-83].

The second prong—the object of my attention—looks to the evidence used to establish the lesser offense. In this regard the *Dively* Court underscored the critical fact that "[f]or purposes of appellate review, the prosecutor conceded that the same evidence that would have been offered on the complaints in the municipal court would have been used to prove defendant's guilt of death by auto." *Id.* at 577. Therefore, because the same evidence that would be used to establish the lesser offense of reckless driving would be used to support the death-by-auto charge, prosecution of the latter was barred, under principles of double jeopardy, by the conviction on the former. *Id.* at 583. *See also State v. DeLuca,* 208 *N.J.Super.* 422 (App.Div.1986) (double jeopardy barred prosecution for driving while intoxicated after defendant had been acquitted of

causing death by auto, where State conceded that evidence of recklessness was limited to and same as evidence of intoxication); *State v. Calvacca,* 199 *N.J.Super.* 434 (App.Div.1985) (defendant convicted of causing death by auto, no double jeopardy bar to later prosecution for drunk driving because evidence of second was insufficient to establish by itself the necessary elements of first); Etzweiler, "The Dively Dilemma," 8 *Crim.Just.Q.* 76, 83–84 (1983) (explaining the two-pronged "elemental" and "evidential" analysis for lesser-included-offense and double jeopardy purposes).

Transferring to the context of this case the principles touched on in the foregoing discussion, I would conclude that if there is proof of recklessness beyond that required to sustain a death-by-auto charge—that is, proof of *acts of recklessness,* in addition to defendant's reckless driving of his automobile, *that caused the victim's death*—then a manslaughter prosecution should be allowed. The emphasis on causative reckless acts makes pertinent another section of the Code, *N.J.S.A.* 2C:2–3, which reads in part as follows: [1]

    a. Conduct is the cause of a result when:

---

[1] *N.J.S.A.* 2C:2–3(c) reads in full:

    c. When the offense requires that the defendant recklessly or criminally negligently cause a particular result, the actual result must be within the risk of which the actor is aware or, in the case of criminal negligence, of which he should be aware, or, if not, the actual result must involve the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.

It is not clear whether the provisions from "if not" in the seventh line to the end of the section apply to reckless conduct or are intended to apply only in respect of criminal negligence. Extended parsing and analysis of lines seven through thirteen is more than this little opinion, to say nothing of its author, should be asked to bear, particularly in the absence of any briefing or argument on the point. Preliminary research has uncovered no helpful authority one way or the other. I have assumed the pertinence of the material, recognizing at the same time that it may apply only to the "criminal negligence" component of the section and not to the "recklessly" part.

(1) It is an antecedent but for which the result in question would not have occurred; and

(2) The relationship between the conduct and result satisfies any additional causal requirements imposed by the code or by the law defining the offense.

    *       *       *       *       *       *       *       *

c. When the offense requires that the defendant recklessly * * * cause a particular result, the actual result must be within the risk of which the actor is aware * * * or, if not, the actual result must involve the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.

This section too supports the conclusion that the legislature did not intend to limit prosecutions only to the "death by auto" statute under circumstances such as those disclosed by this record. The relevance of the quoted provision of the Code becomes more apparent in part III of this opinion.

Reading all the pertinent sections of the Code together, I am satisfied that the State may seek an indictment for both death by auto and manslaughter, as contemplated by the Code, *N.J. S.A.* 2C:1–8(a) ("When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense."), and a grand jury may very well indict for both, depending what evidence it receives. In the event that the grand jury indicts for both and, assuming the sufficiency of the evidence, the case goes to a petit jury, the trial court should give a "lesser included offense" charge (I will try in a moment to relate the concept to this case). *See State v. Thomas,* 118 *N.J.Super.* 377 (App.Div. 1972) (defendant indicted and convicted of unlawful possession of heroin, unlawful sale thereof, and manslaughter resulting from user's self-administration of drug; held, defendant could not be convicted of unlawful sale of heroin as well as of manslaughter because "unlawful sale of heroin * * * was an essential element of the manslaughter and must therefore be considered an included offense." *Id.* at 380). If, as here, the indictment is for manslaughter only, the jury again should be charged on the lesser-included offense of "death by auto," and

a jury is free to convict on the latter alone. *N.J.S.A.* 2C:1–8(d). If the indictment is for but one of the offenses, and a prosecution for that offense goes forward, a subsequent prosecution for the other would, in the absence of new evidence, be foreclosed by the Code, see *N.J.S.A.* 2C:1–10(a)(1), as well as by principles of double jeopardy. *See State v. Calvacca, supra,* 199 *N.J.Super.* at 439; "The Dively Dilemma," *supra,* 8 *Crim. Just. Q.* at 78 n. 24, 85–86 and n. 72.

Nothing in the legislative history persuades me that the approach outlined above does violence to any of the applicable statutes. The legislative activity that spawned the first "death by auto" statute, *L.*1935, *c.* 282, codified in *R.S.* 2:138–9, began with Senate Bill No. S–77. When it was originally introduced by Senator Hendrickson, its sponsor, the bill in essence proscribed the commission of *negligent* criminal homicide. *Senate Bill No. S–77,* § 1. The bill expressly provided that the offense was a lesser-included offense of manslaughter, and that manslaughter prosecutions remained possible in vehicular homicide cases. *Senate Bill No. S–77,* §§ 3, 5. The culpability element prescribed in that bill, however, conflicted with the general state policy at that time against criminal *negligence* offenses. See Code Commentary, *supra,* at 65. When the bill was finally enacted, its culpability element was criminal recklessness, see *State v. Oliver,* 37 *N.J.Super.* 379, 381 (App.Div.1955), (quoting *In re Lewis,* 11 *N.J.* 217, 222 (1953)), and it did not contain the language indicating that manslaughter remained an available prosecutorial option. Although the failure to include such language could be construed as evidence of intention not to make death by auto a lesser-included offense of manslaughter, the better interpretation is that such language was deemed unnecessary because the offense was so plainly a lesser-included offense of manslaughter under established, well-recognized, time-honored principles. See, *e.g., State v. Cooper,* 13 *N.J.L.* 361, 375 (1833).

## III

My view of the foregoing statutory scheme is that the legislature contemplated that it would be up to the jury to determine whether it was simply the defendant's reckless operation of a motor vehicle that produced the victim's death, or whether instead some antecedent reckless conduct played an indispensable role in the result—the "but for" component of *N.J.S.A.* 2C:2–3(a)(1). Specifically, as applied to this case, the jury should be given the option of deciding whether, on the one hand, the State has proven beyond a reasonable doubt that defendant's activities and peregrinations on the day in question from 9:30 or 10:00 a.m. on, including his drinking,[2] his truculent reaction to being refused more brandy, and his obstinance in rejecting offers of alternative transportation, amounted to recklessness within the statutory definition, and whether, in the words of the statute, *N.J.S.A.* 2C:2–3, that conduct earlier in

---

[2] I am aware that the legislature has amended the "death by auto" statute to require a minimum sentence of 120 days imprisonment or 120 days of community service for defendants who were driving under the influence of alcohol or drugs when they committed the offense. *N.J.S.A.* 2C:11–5(b); *L.* 1983, *c.* 39, § 1. Arguably, that would seem to manifest a legislative intent to limit the role of drinking so as to foreclose consideration of it as an additional item of evidence that would serve to distinguish a manslaughter prosecution from a death-by-auto case. I suggest, however, that under certain circumstances drinking would constitute an additional act of recklessness that would justify a manslaughter prosecution. The circumstances surrounding the drinking would have to have extraordinary characteristics.

What I am driving at here is that there is "drinking" and then there is "drinking!" The point is not esoteric. Although there is no excuse for getting behind the wheel while in an intoxicated condition—none whatsoever—I see a difference between the intoxicated reckless driver who, after working two jobs over an 18–hour stretch, sits down to a quiet drink or two when a moment of respite finally arrives and who, because of his exhausted state, succumbs quite unexpectedly to the effects of alcohol; and the intoxicated reckless driver who got that way by setting out to "do the town" and ignoring the pleas of all those who might attempt to persuade him not to drive and continuing to drink beyond all reason. Maybe the latter amounts to "reckless drinking." Anyway, I think the difference would permit characterization of the second kind of drinking as a separate and different act of recklessness that would support a charge of manslaughter and possibly aggravated manslaughter as well.

the day, up to the time defendant left the last saloon and began his fateful journey, was an "antecedent but for which" the collision that produced the victim's death would not have occurred. Moreover, the jury should determine (again tracking the statutory language) (1) whether defendant was in fact aware that the "actual result"—the automobile collision and the death of the victim—was within the risk of the foregoing conduct, or, if he was not, (2) whether the "actual result"—the automobile collision and death of the victim—"involve[d] the same kind of injury or harm as the probable result and [was] not * * * too remote [or] accidental in its occurrence * * * to have a just bearing on the [defendant's] liability or on the gravity of his offense." See n. 1 *supra*. The jury would likewise be asked to consider the other side of the coin: whether the proofs, when measured by the "beyond a reasonable doubt" standard, establish only that it was defendant's reckless (as defined by *N.J.S.A.* 2C:2–2(b)(3)) driving of his truck that caused the crash. If the State convinced the jury by the requisite standard of proof that proposition (1) or (2) had been demonstrated, a conviction for manslaughter would result. If only the elements of death by auto as described above were established, a verdict for that offense would be returned. The jury could of course conclude that neither proposition met the requisite standard of proof, in which event it would acquit.

These available options could be given to the jury in the court's charge, with little fear of confusion. In other settings we do not hesitate to leave much more complex issues and convoluted questions of fact for jury resolution in both criminal and civil trials. And to the extent that abuse of prosecutorial discretion is a legitimate concern, the opportunities therefor are sharply reduced by the approach advocated in this opinion.

### IV

The Appellate Division, as well as the trial court, dutifully recognized the basic principle that

the existence of a specific statute does not preclude prosecution under a general statute unless a legislative intent to limit the prosecution to the specific statute is shown by an inconsistency between the two, making it impossible to give them concurrent operative effect. * * * [B]oth statutes should be given effect if reasonably possible and * * * legislative intent of mutual exclusivity must be manifest and admit of no other reasonable interpretation. [202 *N.J.Super.* at 339–40 (citation omitted).]

I would keep faith with these important principles by allowing prosecution under both statutes, because a reasonable interpretation of the statutory scheme can be made that would not foreclose the applicability of the "reckless manslaughter" statute along with the "death by auto" statute when a motor vehicle is the instrumentality of death. I would therefore reverse and remand for trial under the "reckless manslaughter" indictment, in which the trial court would be obliged to charge the jury on the lesser-included offense of causing death by auto.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*For reversal and remandment*—Justices CLIFFORD and STEIN—2.