THE STATE, DEFENDANT IN ERROR, v. CHARLES BLAINE, PLAINTIFF IN ERROR.

Argued October 21, 1927—Decided February 6, 1928.

For the plaintiff in error, *John W. McGeehan, Jr.* (*John M. Mills*, on the brief).

For the state, *Albert H. Holland*, prosecutor of the pleas.

The opinion of the court was delivered by

PARKER, J. We conclude that the judgment should be affirmed, and in the main for the reasons stated in the *per curiam* opinion of the Supreme Court, *ubi supra*. There are a few minor errors in that opinion which do not affect the result. The amiesite road mentioned is eighteen feet wide, and not one hundred and fifty feet as stated; no doubt what was running in the mind of the writer was the one hundred and fifty feet that defendant's car traveled after striking the two men. The statement that we have a statute declaring that driving of an automobile by a person intoxicated shall be a misdemeanor is incorrect. There was such a statute (*Pamph. L.* 1909, *p.* 200; *Comp. Stat., p.* 3442, *pl.* 36*b*) quoted in *State* v. *Dugan*, 84 *N. J. L.* 603 (at *p.* 607); *affirmed*, 85 *Id.* 730; but the act of 1913, page 103, turned the offense into a disorderly act, and repealed the 1909 act

by implication. *State* v. *Rodgers*, 91 *Id.* 212, 219. This in turn was repealed (*Pamph. L.* 1921, *p.* 488—14) and substantially re-enacted as paragraph (3) of section 14 of the Motor Vehicle act of 1921. *Pamph. L., p.* 665; *amended, Pamph. L.* 1923, *p.* 297. The offender is liable to imprisonment of not less than thirty days nor more than six months, and may be tried and convicted in a summary proceeding. *Pamph. L.* 1921, *p.* 677 *et seq.;* see *State* v. *Rosenblum,* 102 *N. J. L.* 125. But, none the less, the driving of an automobile by a person intoxicated is an unlawful act, as the Supreme Court properly says. Whether if the death of a person is attributable to such unlawful act, the killing is manslaughter *per se,* as the Supreme Court seems to intimate, is not so clear. See *Estell* v. *State,* 51 *Id.* 182, 185, where the test applied was whether the violation of the law had a dangerous tendency. 2 *Russ. Cr.* \*638; 29 *C. J.* 1153. In this class of cases the authorities are not wholly in accord as to the character of the unlawful act as an element of manslaughter. See *Whart. Hom.* (3d ed.), *p.* 336, § 213. There is another class of cases based on killings as a result of gross negligence, without more. For example, in *State* v. *Dugan, supra,* it was said (at *p.* 608) of 84 *N. J. L.,* that "the real inquiry was: Was the death of McDermott occasioned by some grossly negligent acts or act of the defendant, in the operation of the automobile, as unfolded by the testimony?" And in the case at bar, the court followed this quite closely, saying to the jury: "If you find the defendant was in an intoxicated condition while driving the automobile which struck Haggerty and Cramer, and that because of some grossly negligent act or acts of the defendant in the operation of the automobile, occasioned by the intoxication of the defendant, these two men were killed, then the defendant is guilty of manslaughter." That instruction was, if anything, too favorable to the defendant, for it limited his criminality to gross negligence due to intoxication, although it need not have been so limited. In this second class of cases the rule is a broad one, as it regards as criminal negligence any act or omission done or left undone, as the case may be, in reckless disregard of the life or safety of another. *State*

v. *O'Brien*, 32 *N. J. L.* (at *p.* 172); *State* v. *Reitze*, 86 *Id.*
407, 409; 29 *C. J.* 1154. Such negligence is often described
as "gross" negligence, the word "gross" in this collocation
implying an indifference to consequences. *Whart. Hom.*
(3d ed.), *p.* 681; 29 *C. J.* 1154, *note* 96 (*c*). Such negli-
gence may be, and often is, the result of intoxication, but may
well exist without it.

The court might properly have charged the eighth request,
that "to convict on the ground of negligence on the part of
the defendant, there must be shown more gross and culpable
negligence than is sufficient to render a defendant liable in a
civil suit for not exercising that care which a reasonable and
prudent person would exercise," but the refusal to charge it
was not error or harmful, because the *quantum* of negligence
necessary to justify recovery in a civil suit had nothing to
do with the case.

The Supreme Court declined to consider the refusal of the
twelfth, thirteenth, fourteenth, fifteenth and sixteenth re-
quests as not properly assigned for error or specified as causes
for reversal, in that the language of the several requests is
not set forth in the assignments or specifications, but they
are merely cited by number. The fourteenth was withdrawn
and the fifteenth was charged. The others we have con-
sidered, notwithstanding the objection stated by the court
below. The twelfth was charged, omitting the caution to ex-
ercise care before convicting on circumstantial evidence
alone. This was properly omitted, as there was direct evi-
dence of both defendant and Guerin tending to corroborate
the circumstantial evidence. The thirteenth was fully cov-
ered in the charge, and the sixteenth was properly refused.
The court had fully covered the subject of reasonable doubt,
but the request assumed that the jury were ignorant of the
basic principle of jury trials, familiar to the most ignorant
citizen, that the verdict of a jury must be unanimous; it
obviously aimed at an undue emphasis on the individuality
of each juror, and ignored the duty of an interchange of
views and an honest attempt to agree on a verdict. Counsel
offers no authority to support such a request. We think the
better view is to the contrary. 16 *C. J.* 1028.

We incline to concur in the view of the Supreme Court that the assignments and specifications purporting to bring up refusals of requests to charge by number are irregular and insufficient. The proper practice in error is to draw assignments of error based on exceptions in strict conformity to the exceptions; and the rule is of long standing that the bill of exceptions should show the request, and either a refusal to charge on the subject at all, or what the charge on the point was. *Petre* ads. *State,* 35 *N. J. L.* 64; *Packard* v. *Bergen Neck Railway Co.,* 54 *Id.* 553. Such is the practice on strict writ of error. When the entire proceedings at the trial are certified pursuant to sections 136 and 137 of the Criminal Procedure act, the specifications of causes for reversal should be as full and definite as assignments of error; in the language of this court in *State* v. *Herron,* 77 *Id.* (at *p.* 525), the object of section 137 is "to apprise the court, and counsel for the state, of.the cause for reversal with sufficient precision to make the point intelligible. It should, where the objection is to the admission or rejection of evidence, point out the precise evidence which was erroneously admitted, and the precise offer which was erroneously rejected." The same rule naturally applies to requests to charge; they should, for certainty and convenience, be quoted in the causes for reversal, and the more so in that there is no bill of exceptions to examine.

The *per curiam* opinion of the Supreme Court fails to indicate that that court considered the weight of evidence pursuant to the act of 1921, although counsel claim that this point, which is duly assigned, was argued in that court. We have ourselves examined the evidence with care, and are of opinion that the evidence fully justified the verdict.

With respect to points not herinabove specifically discussed, we concur in the views expressed by the Supreme Court.

The judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, BLACK, CAMPBELL, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 11.

*For reversal*—None.