THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HERMAN HEDINGER, PLAINTIFF IN ERROR.

Argued October 8, 1940—Decided April 14, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the defendant in error, *William A. Wachenfeld,* prosecutor of the pleas; *C. William Caruso,* special assistant prosecutor.

For the plaintiff in error, *Edward R. McGlynn* (*Joseph Weintraub,* on the brief).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. Plaintiff in error was convicted of causing the death of Caspar Kurak by driving a motor

vehicle "carelessly and heedlessly in willful or wanton disregard of the rights and safety of others," &c. *R. S.* 2:138-9. The deceased, a pedestrian, was struck by an automobile operated by plaintiff in error on Valley street in the City or Orange on November 1st, 1939, at about two o'clock in the morning. No eye witness to the accident was produced. Of necessity, the state's evidence was largely circumstantial in character. There had been rain for three or four days preceding the night in question, in fact sleet and rain, but the road, according to the testimony of the defendant himself, was "pretty near dry but not quite. It was a pretty bad night." But apparently there had been a drizzling rain earlier that night, although at the time of the accident there was no occasion for the defendant to use "his windshield wiper" and the visibility, he says, was good, and his automobile lights "were on."

The brief of the plaintiff in error concedes that the evidence produced by the state, especially certain exhibits—pieces of glass from a smashed headlight and portions of the grille, "which matched the damage to the defendant's vehicle * * * was sufficient to justify a finding that the defendant's car struck the deceased."

The deceased, aged sixty-two, was crossing the public road, Valley street, presumably to reach his home located on said street. He had started from the easterly to the westerly side of the roadway. The defendant was traveling south on Valley street and testified that nothing collided with his automobile. Mr. Kurak was found in the center of the roadway, badly injured; both legs were broken, the bones being splintered; six ribs on his right side had been fractured; the skull was not fractured but the surface of the brain showed a "generalized hemorrrhage of the traumatic type." The deceased had left a tavern on Valley street, conducted by the witness, John Peeles, at about one-fifty-five in the morning. The plaintiff in error had been engaged in a shuffleboard match in Orange and had been in the company of his brother-in-law and a relative of the latter. After the match he went to a tavern where he remained until one-forty-five A. M. or thereabouts. At this juncture it is only fair to say there was no

evidence at all that either the deceased or the plaintiff in error was under the influence of liquor.

The defendant concedes that he went along Valley street and passed the exact spot where Kurak was later found. At the time of the unfortunate happening one witness, a young lady who lived at 543 Valley street and whose family occupied an apartment on the third floor of the house, heard a "crash," to use her own words, although her bedroom was the third room from the front of the building. She had just retired for the night when, hearing this disturbance, she called her mother and the two of them went to the front room of the apartment, looked through the window and saw a black automobile, standing on the street below, without lights, but with the motor running. The body of the decedent was not visible to the witness at that time but shortly thereafter the car was driven off and it was then that she saw the body of a man lying in the roadway. A little later she saw another automobilist, homeward bound, drive up, stop his car, remove the body to a place of safety and seek help. This is sufficient description of the scene at the time immediately after the happening.

Plaintiff in error says that the trial court fell into error in permitting the jury to consider the question of defendant's flight from the scene "in its charge as to flight and in its refusal to grant the defendant's request to charge as to flight." Under this heading it is first argued that what the court said to the jury concerning flight was error. In this element of his charge the learned trial judge said, in brief, that if from the testimony the jury believed beyond a reasonable doubt that the defendant struck the deceased, and knew that he struck him, and fearing an accusation would be made against him and for the purpose of evading that accusation took refuge in flight, then the jury might take that flight into consideration, in connection with all other testimony and evidence in the case, because the flight of the defendant, after the commission of the deed, is a circumstance tending to prove consciousness of guilt. In arguing this point, plaintiff in error contends there was no element of concealment on defendant's part and that therefore this instruction was prejudicial

and erroneous in law. We do not think it was. As an abstract proposition flight, after a wrong done, standing alone, raises no legal presumption of guilt. It is a circumstance to be considered by a jury with the other proofs and those other proofs, in conjunction therewith, might legitimately support the jury's conclusion that a defendant fled because he was conscious of guilt. But there might have been facts and circumstances, entirely legitimate, connected with flight which would not support such an inference at all.

It should be noted in this case that the defendant testified to a state of facts which negatived any idea of flight. His testimony was that he was not aware of any collision with anything or anybody; that his homeward trip on the night in question was uneventful. Whether the defendant left the scene after the happening in the manner indicated by the witness to whose testimony we have referred was a fact issue and the jury had the benefit of the testimony from both sides on this issue. The issue therefore of whether the defendant consciously fled from the scene of the accident was, in our judgment, properly left for consideration by the jury. Under this heading it is argued that it was error to refuse the defendant's fourth request to charge. The fourth request, admittedly an excerpt from 16 C. J. 552, was properly rejected. The request was too abstract, was not precise, and was multiplicitous in any event. The court's charge on this element of the case was a better exposition of the law on this issue than the proffered request. Finally, under this point, it is said that the trial judge erred because he said, on the question of flight, "Such evidence, if believed, is deemed, if unexplained, to raise some inference of guilt." The argument is that this excerpt is erroneous because it requires a "jury to draw an inference of guilty from the fact of flight if it does not believe the defendant's explanation, whereas flight is at best but some evidence from which the jury may or may not draw an inference. It merely justifies an inference." This challenged sentence is the last utterance contained in the paragraph which the court devoted to this subject. Standing alone, there is quite some logic to the argument of the plaintiff in error but, when considered in conjunc-

tion with what went before, in which the court laid down its views on the subject, we do not think there was room for the misconception which counsel fears.

The second point is that the trial court erroneously charged the jury that it might find "that the defendant operated his car in a state of obliviousness and that such finding would have a bearing on the charge made in the indictment." It is necessary to paraphrase briefly just what the court did say prior to this statement. The court summarized some of the testimony of the case and recalled the testimony of the young lady who said she saw the car standing in the street; that prior thereto the crash was heard; that the car moved away quickly; that pieces of glass and metal and the like were found in the roadway; that the car of the defendant on the next day was found to have broken and bent grille work and a smashed left headlight, and then, adverting to the defendant's testimony, said, "The defendant testified that he was not a participant in the occurrence although it was admitted that he drove the car over the precise route where the accident happened; that he had no sensation of collision or crash." The court then said to the jury—"You may ask yourself if he did strike a man, and I do not pretend to say he did or did not; if he did strike a man in such a way as to inflict these injuries upon him and so caused injuries to his car * * * in such a way as to make a noise to be heard on the third floor in a back room, if that did occur, you may ask yourself whether or not he was oblivious to what was going on around him," and if he * * * was oblivious to what was going on around him it had a "bearing upon his carelessness and recklessness."

When we consider the defense in this case, viz., that the collision, so far as the defendant was aware, simply had not occurred, of course it was permissible for the jury to conclude (if they believed that the deceased had been struck by the defendant's car which almost of necessity they had to accept, and if they were to give credence to the defendant's testimony that he was unaware that his car had collided with any object—notwithstanding that his headlight had been smashed and the grille work on the car's front broken) that the

defendant drove his car without any appreciation or awareness of events and circumstances around him. In the light of this permissive inference, the court's charge concerning "obliviousness" under such a finding takes on a significance that was material to the issue. This is the common sense of the matter and it was not error so to charge.

It is next said that it was error to have denied the defendant's motion for an acquittal at the end of the state's case and at the end of the entire case. We think there was sufficient evidence to go to the jury. Taking all of the elements of proof in the state's case—the noise of the crash distinctly heard at a considerable distance away under conditions none too favorable, the smashed headlight, the broken grille work, and the testimony of an expert that the hard metal part of the grille work would not break unless under force of a severe impact, taken in conjunction with the statement of the defendant that the happening in question never occurred so far as he knew, was sufficient for the jury, entering the realm of inference as they had to do, to conclude that the vehicle at the time of the happening was driven "carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, &c." (2:138-9.)

In conclusion it is argued that the finding was against the weight of the evidence. From what has been said, the contention of both sides, through their witnesses, is sufficiently outlined. We cannot say that the verdict was the result of mistake, prejudice or bias.

The judgment under review is affirmed.