ANTHONY MULLICA, BY HIS NEXT FRIEND, JOHN MUL-
LICA, AND JOHN MULLICA AND LENA MULLICA, INDI-
VIDUALLY, PLAINTIFFS-APPELLEES, v. ANGELO V.
CLAPS AND PAUL CLAPS, DOING BUSINESS UNDER
THE STYLE AND TRADE NAME OF CLAPS BROTHERS,
DEFENDANTS-APPELLANTS.

Submitted May 5, 1942—Decided August 25, 1942.

·Before BROGAN, CHIEF JUSTICE, and Justices PARKER and
PORTER.

For the plaintiffs-appellees, *Collins & Corbin* (*Edward A.
Markley* and *Peter P. Artaserse*).

For the defendants-appellants, *McDermott, Enright & Car-
penter* (*Patrick A. Dwyer* and *Charles A. Rooney,* of
counsel).

BROGAN, CHIEF JUSTICE.

The infant plaintiff brought suit by his next friend for personal injuries suffered by him which were alleged to have resulted from the negligent operation of the defendants' auto truck by defendants' employees, Bracey and Harris. The parents of the infant brought suit to recover the moneys expended for medical services which the infant required and for the loss of his services.

The appeal is from the judgment recovered by the plaintiffs.

The facts and circumstances surrounding the incident complained of were that the defendants' truck, loaded with junk metal which reached a height of about eleven feet, was being operated southerly on Coles Street, in Jersey City. In this area Railroad Avenue, running east and west, accommodates the main line of the Pennsylvania Railroad by overhead railway. On reaching Railroad Avenue the operator of the truck, considering that there might not be enough clearance to permit the loaded truck to pass under the railroad bridge, turned right on Railroad Avenue and proceeded in a westerly direction along the northerly side of that street. As he approached Monmouth Street the accident happened. At this point the northerly side of the railroad trestle is twelve feet eight inches from the northerly curb line. The columns supporting the overhead railroad stand in the roadway. The rear, right side wheel of the truck ran over the leg of the infant plaintiff causing serious and permanent injuries. The boy was five years old at the time of the accident. Just how the accident occurred is a matter of conflicting testimony. For the plaintiffs there was testimony to support the conclusion that the truck was traveling at a "fast" rate, close to the curb of the sidewalk where the infant plaintiff was walking in an easterly direction towards his home; that Harris was standing on the right side running board of the truck; that when he reached a point opposite the boy, reaching out, he pushed him, with the result that the boy fell and his leg went under the rear wheel. As against this the defendants produced testimony to the effect that the infant plaintiff, with other children, was playing a child's game in the course of which he was pushed by one of the children, a boy bigger than the rest, towards

the oncoming truck; that the defendant Harris, standing on the running board, attempted to push the plaintiff out of danger; that he himself fell off the truck in his endeavor to save the boy from injury. Bracey and Harris were conceded to be employees of the defendant at the time, but it is argued that if Harris pushed or attempted to push the boy that he was not acting within the scope of his employment and that, therefore, the *respondeat superior* doctrine has no application.

Three witnesses testified for the plaintiff concerning the manner in which the accident happened—Mary Mullica, Josephine Giaquinto and Helen Zymoski. The first of these witnesses, a twelve-year-old sister of the plaintiff (she was eight years old at the time of the accident) said that the boy stopped on the street to speak to Miss Zymoski and that Harris, from the running board, as the truck was going by very fast, pushed her brother on the right shoulder, with the result that he fell and the rear wheel of the truck passed over his foot; that at the time the boy was on the sidewalk about a foot from the curb; that the position of the truck in the roadway was also about a foot from the curb; that infant plaintiff, when pushed, lost his balance and fell. The next witness corroborated this testimony and said that the truck was going fast, no horn was sounded, and the wheels of the truck were about a foot from the curb, the running board almost even with the curb. The testimony of Miss Zymoski was to the same effect.

As against this, one Jerry Collins testified for the defendants, saying that he saw the accident; that the infant plaintiff was pushed by another boy; that Harris tried to "grab" the infant plaintiff and push him out of harm's way but missed him and in so doing fell off the truck to the sidewalk. On cross-examination the witness admitted he did not see anyone push the boy; he further admitted at a previous trial of this case he then testified that he did not see the accident; that he did not see the boy fall backward or "shoved" or that the boy "slid." He finally said that his testimony at the previous trial was true.

Bracey, the chauffeur of the truck, said he was about five

feet from the curb at the time of the happening; that he saw the children on the sidewalk and hearing a "yell," stopped, got off the truck and then learned about the accident; that Harris was on the running board and a man named Heyden was on the front seat with him. Asked to explain why Harris was on the running board, he said, "he was helping to see if the load were too high to go under the trestle at Railroad Avenue." He admitted that at the previous trial he had testified that he feared the truck would not clear the trestle and that was the reason for turning into Railroad Avenue and also for driving near the curb, but that the truck was five feet from the curb at the time of the happening.

Harris testified to a like set of facts and said that the infant plaintiff was pushed backward from the sidewalk by other children; that he called to the driver to stop and, holding out his hand, tried to push the boy away from the truck but was not able to reach him. This testimony was corroborated by another witness, Ida Thompson. The jury had these matters before them in addition to the fact that the truck, a seven-ton "Mack" with a seven-ton load, was seven and a half feet in width and twenty-four feet in length. On these facts and circumstances the appellants say the court should have directed a verdict for the defendants at the conclusion of the case. The argument is that "the only reasonable inference to be drawn from the testimony of the plaintiff's witnesses is that the pushing was a willful, wanton, and unjustified act of assault and battery by the defendant Harris, upon the infant plaintiff;" also that the plaintiffs' version of the case, as against that to be drawn from the testimony of the defendants' witnesses, is so discordant that "the acceptance of one [theory] automatically excludes the other;" and, further, that the plaintiffs offered no proof to explain why Harris was on the running board of the truck, and even though it is admitted that he was there at the time of the accident the evidence is clear that he had no duty to perform there; that consequently he was not acting within the scope of his employment. These propositions do not follow as a matter of law under our cases. First of all, it is well settled

that on a motion for nonsuit or direction of verdict the testimony in the case is to be considered in a light most favorable to the party agaist whom the motion is made, together with all the inferences that such testimony will support.

Now, the testimony before the trial court manifestly justified the inference that Harris was on the running board to help direct the movements of the truck and to guard against any collision between the loaded truck and the trestle or the transmission boxes affixed thereto and that his action in attempting to push the boy was to keep him away from the danger of the oncoming truck. If, as the defendants say, the truck was five feet from the curb it would be quite a task to reach over and push a boy who was on the sidewalk a foot from the curb—a distance over all of six feet. And so in rejecting the motion for a directed verdict the learned trial judge apparently had in mind that the jury might have concluded from the testimony—certainly it was permissible for them to do so—that the truck was running along the roadway a foot from the curb, as some of the plaintiffs' witnesses testified, and that the running board was level with the curb; that Harris was watching the trestle to see that the top of the loaded truck kept clear of any obstruction and that because he saw the boy in what he concluded was a place of danger he reached out to push him out of harm's way and that the incident turned out disastrously for the plaintiff. If that is what happened, and the jury were privileged to find that it was, he was doing the master's business riding on the running board of the truck and his act of pushing the boy out of harm's way was also, if done under these circumstances, in the scope of his employment. It was, therefore, not error to have rejected the motion for a direction under the facts in proof. This disposes of the appellant's first ground of appeal.

The second, third, fourth and fifth grounds of appeal fail to raise properly any point for our consideration. It is unnecessary to set out the grounds of appeal at length, except to say that they challenge the court's charge to the jury. They are unavailing for the reason that they fail to quote the precise instruction complained of.

These questions of practice are thoroughly settled by such cases as *State* v. *Blaine,* 104 *N. J. L.* 325; 140 *Atl. Rep.* 566; *State Highway Commission* v. *Zyk,* 105 *N. J. L.* 156; 144 *Atl. Rep.* 8; *McKenna* v. *Reade,* 105 *N. J. L.* 408, 412; 144 *Atl. Rep.* 812; *Chapin* v. *Kreps,* 106 *N. J. L.* 424; 147 *Atl. Rep.* 398; *Klein* v. *Shryer,* 106 *N. J. L.* 432; 150 *Atl. Rep.* 321; *Stalhos* v. *Bunevich,* 107 *N. J. L.* 269, 272; 153 *Atl. Rep.* 574; *Booth* v. *Keegan,* 108 *N. J. L.* 538; 159 *Atl. Rep.* 402, &c.

The sixth ground of appeal also challenges the court's charge to the jury, but this point, likewise, may not be considered. The exception listed under this ground of appeal consists of an entire printed page from the charge. The excerpt contains instructions that are unquestionably correct as a matter of law, and, this being so, even though some part of the entire excerpt might be erroneous legally (and we do not intimate any view on whether it was or not) nevertheless such an assignment is futile. Grounds of appeal, like exceptions, must be specific and limited, each to a single ruling or to a single point in the charge. *Martin* v. *Studebaker Corp.,* 102 *N. J. L.* 612, 613; 133 *Atl. Rep.* 384; *Max* v. *Max,* 123 *N. J. L.* 580; *affirmed,* 125 *N. J. L.* 271; 10 *Atl. Rep.* (2d) 163; *affirmed,* 15 *Atl. Rep.* (2d) 616.

We deem it appropriate to repeat that an exception to a part of a charge containing distinct and separate propositions of law is not available on appeal. The practice in this particular has been settled for many years. *Packard* v. *Bergen Neck Railway Co.,* 54 *N. J. L.* 553, 556; 25 *Atl. Rep.* 506, and cases cited therein. See, also, *Martin* v. *Studebaker Corp., supra.*

We have considered this appeal on the only ground that, in our judgment, is available to the appellant, namely, the first, and finding no error therein the judgment is, consequently, affirmed, with costs.