200 N.J. Super. 488 (1985)
491 A.2d 818
STATE OF NEW JERSEY, PLAINTIFF,
v.
PATRICK POTTS, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal), Cumberland County.
Decided February 25, 1985.
*490 Albert J. Garofolo for plaintiff (Kenneth A. Pagliughi, Cumberland County Prosecutor, attorney).
Arthur F. Sewall for defendant (Theodore H. Ritter, Public Defender, attorney).
TELSEY, P.J.Cr.
This criminal proceeding raises for the first time the question of whether the Legislature intended that all criminal homicide prosecutions for death resulting from the reckless driving of a vehicle be limited to a death by auto charge under N.J.S.A. 2C:11-5. This court holds that it did not.
The setting in which this issue arises occurred on April 3, 1984 at 8:49 p.m. Defendant, Patrick Potts, was driving a Ford sedan southbound on County Road 625 (Hogbin or Center Grove Road) while allegedly intoxicated when he admittedly ran through a stop sign that he knew was there and collided with a Chevy pick-up driven by David Sheppard westbound on County Road 620 (Buckshutem Road). The momentum from the impact was so great that both vehicles were propelled into an open field, where they became engulfed in flames. Sheppard was burned beyond recognition and was pronounced dead at the *491 scene. Defendant's brother, Thomas Potts, an occupant of defendant's Ford sedan, was transported to Millville Hospital where he died as a result of his injuries.
A blood sample taken from defendant in the hospital at 9:42 p.m. disclosed a blood alcohol content of 0.142%. Further investigation disclosed an eight-pack of 12-ounce beer bottles in the vehicle. Pott's vehicle was found to be in high gear after the accident.
As a result of the fatal collision, Potts was indicted on two counts of aggravated manslaughter under N.J.S.A. 2C:11-4(a), two counts of manslaughter under N.J.S.A. 2C:11-4(b) and two counts of death by auto under N.J.S.A. 2C:11-5.
Defendant brought this motion to dismiss the manslaughter and aggravated manslaughter counts of the indictment on the grounds that a reckless killing by auto cannot fall within those statutory provisions, but must be limited to prosecution under N.J.S.A. 2C:11-5, death by auto. The arguments of defendant rely heavily on legislative intent. That is, had the Legislature intended that cases involving death by auto be prosecuted under N.J.S.A. 2C:11-4, it would have either expressly indicated that fact, or it would never have enacted the death by auto statute, N.J.S.A. 2C:11-5. In support of his argument, he relies upon the legislative history of N.J.S.A. 2C:11-5, the comments of the Criminal Law Revision Commission, and canons of statutory construction.
Analysis of the legislative history of the death by auto statute discloses that the Legislature rejected a negligent homicide statute that stated that "[c]riminal homicide constitutes negligent homicide when it is committed negligently under circumstances manifesting extreme indifference to the value of human life." I Final Report of the New Jersey Criminal Law Revision Commission, at 51 (1971). It felt that the concept of negligent homicide was too broad. Senate Judiciary Committee Statement to Senate Bill 738 (1978), with Senate Committee amendments at 4. Instead of a general statute, the Legislature adopted a specific statutory section addressing death by *492 auto which stated that "[c]riminal homicide constitutes death by auto when it is caused by driving a vehicle carelessly and heedlessly, in a willful or wanton disregard of the rights or safety of others." L. 1978, c. 95.
In 1981, N.J.S.A. 2C:11-5 was amended changing the culpability requirement from driving a vehicle "carelessly and heedlessly in a willful or wanton disregard of the rights or safety of others" to "driving a vehicle `recklessly'". L. 1981, c. 312. The change reflected the levels of criminal culpability proscribed by N.J.S.A. 2C:2-2. In adopting the 1981 amendment, the Senate stated in pertinent part that "Senate Bill No. 1417 would lower the standard of conduct required for a conviction under New Jersey's death by auto statute. It is felt that the present standard is too restrictive making convictions a virtual impossibility." Senate Judiciary Committee Statement to Senate Bill 1417 (1980).
In 1983, N.J.S.A. 2C:11-5 was again amended to add a mandatory minimum sentence of imprisonment or community service for defendants convicted of death by auto who were operating the vehicle under the influence of intoxicating liquor or drugs. L. 1983, c. 39.
In 1984, N.J.S.A. 2C:11-5 was again amended to upgrade death by auto from a fourth degree crime to a third degree crime. L. 1984, c. 212.
In summary, first the Legislature created a specific statutory definition of death by auto, rather than have the offense included within a broader category of negligent homicide. Secondly, the culpability requirement was changed to "reckless" in order to correspond with the four levels of culpability used in the revised New Jersey criminal code rather than the more nebulous "willful and wanton disregard" standard. Finally, the 1983 amendment establishing a mandatory minimum sentence for defendants found guilty while driving under the influence of intoxicating liquor or drugs, together with the 1984 amendment elevating death by auto from a fourth degree crime to a third degree crime logically supports a conclusion that it was *493 the intent of the Legislature to "crack down" upon defendants charged with death by auto and to make it easier to prosecute them. It is an absurdity to conclude that the Legislature intended to limit criminal homicide prosecutions to N.J.S.A. 2C:11-5 simply because the instrumentality causing the death was a vehicle instead of another device which in the manner it is used is known to be capable of producing death or serious bodily injury. N.J.S.A. 2C:11-1(c).
Essentially, defendant contends that a vehicle can never be used as a "deadly weapon" to perpetrate a murder or manslaughter. Such a result is absurd. It has been held that a driver who recklessly causes an accident resulting in serious bodily injury to another may be charged with aggravated assault under N.J.S.A. 2C:12-1(b)(1). State v. Parker, 198 N.J. Super. 272 (App.Div. 1985); State v. Niemeyer, 195 N.J. Super. 559 (Law Div. 1984); State in Interest of A.W.S., 182 N.J. Super. 334 (J & D.R.Ct. 1980), aff'd 182 N.J. Super. 278 (App.Div. 1981).
If a driver who recklessly causes an accident resulting in serious bodily injury to another person may be charged with a criminal offense under N.J.S.A. 2C:12-1(b)(1), a second degree offense, as well as charged with a motor vehicle violation, does it not logically follow that a driver who recklessly causes an accident resulting in another's death may similarly be charged with a criminal offense carrying a penalty at least equal to the penalty imposed for causing serious bodily injury?
In the absence of a clear manifestation to the contrary, it is neither the court's function nor its duty to impute to the Legislature an intention that automobile fatalities fall solely under N.J.S.A. 2C:11-5. State v. Dalglish, 86 N.J. 503 (1981). If the facts fit both, the State has the right to elect which statute it will use in its prosecution, absent a clear legislative intent to the contrary. State v. Cox, 150 N.J. Super. 599, 606 (Law Div. 1977), aff'd 160 N.J. Super. 28 (App.Div. 1978), State v. Drake, 79 N.J. Super. 458, 462 (App.Div. 1963); State v. Johnson, 67 N.J. Super. 414, 419-422 (App.Div. 1961).
*494 In State v. Johnson, supra, defendant claimed that carrying a woman off for the purpose of rape was abduction, punishable under N.J.S.A. 2A:86-1, and not punishable under the more serious kidnapping statute, N.J.S.A. 2A:118-1. The court found that while abduction and kidnapping were separate crimes, the elements necessary to convict under each did overlap to define and punish the same act. Nevertheless, the State had the right of election. The elements of death by auto and manslaughter also overlap. N.J.S.A. 2C:11-4(b)(1) states in pertinent part that "[c]riminal homicide constitutes manslaughter when it is committed recklessly," while N.J.S.A. 2C:11-5 states in pertinent part that "[c]riminal homicide constitutes death by auto when it is caused by driving a vehicle recklessly." Under each statute, the State must prove that a defendant caused the death of another through his reckless conduct.
Similarly, in State v. Cox, 150 N.J. Super. 599, 606 (Law Div. 1977), the court recognized that specific conduct may violate more than one statute. However, generally where two statutes overlap, the prosecutor may proceed under either in the absence of clear legislative intent to the contrary. Cox involved meter tampering. Defendants were charged under an older general fraud statute, rather than under a later enacted statute specifically addressing meter tampering.
In this case, the prosecutor may elect to proceed under the manslaughter statute, N.J.S.A. 2C:11-4(b)(1), or the death by auto statute, N.J.S.A. 2C:11-5. Since the statutes have identical elements, the prosecutor may not proceed under both because there would be no guidelines for the jury to differentiate between the two charges. Its decision, therefore, could only be arbitrary and based upon conjecture.
A different result is reached when considering the charge of aggravated manslaughter under N.J.S.A. 2C:11-4(a) which states:
Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life. [Emphasis supplied]
*495 The elements of both the manslaughter statute and death by auto statute are identical. However, the elements of the death by auto statute and the aggravated manslaughter statute overlap, but are not identical. Aggravated manslaughter has an additional element which the State must prove. The element of culpability is greater than mere recklessness. It is recklessness under circumstances manifesting extreme indifference to human life. See State v. Curtis, 195 N.J. Super. 354 (App.Div. 1984) (distinction between aggravated and reckless manslaughter).
The prosecutor, therefore, may charge aggravated manslaughter and either manslaughter or death by auto.
The second line of argument presented by defendant raises the constitutional issue of due process. Due process requires that an individual be put on notice that a certain act violates a particular law. Thus, defendant argues that there is nothing contained in the New Jersey code of criminal justice which provides notice to a person of reasonable intelligence that the reckless driving of a vehicle may render him liable for prosecution under the manslaughter provisions of N.J.S.A. 2C:11-4.
The New Jersey Supreme Court has stated that due process is the heart of the rule that penal statutes are to be strictly construed. It is a well established legal principle that no one shall be punished for a crime unless both the crime and its punishment are clearly set forth in positive law. In Re Suspension of DeMarco, 83 N.J. 25, 36 (1980).
However, in DeMarco, our Supreme Court went on to say that:
It does not invariably follow, however, that every time someone can create an argument as to the meaning of a penal sanction, the statute is impermissibly vague, or that the lowest penalty arguably applicable must be imposed. Numerous cases have rejected this approach. [Citations omitted]
The question ultimately is one of fairness, given the statute and its provisions, and given the situation of the defendant. Should he have understood *496 that his conduct was proscribed, should he have understood that the penalty about to be imposed was the sanction intended by the Legislature? The test is whether the statute gives a person of ordinary intelligence fair notice that his conduct is forbidden and punishable by certain penalties. That test, however, does not consist of a linguistic analysis conducted in a vacuum. It includes not simply the language of the provision itself, but related provisions as well, and especially the reality to which the provision is to be applied. [Id. at 36-37.]
The test here is would a person of ordinary intelligence understand that he may be prosecuted for manslaughter (pursuant to N.J.S.A. 2C:11-4) when he recklessly causes the death of another person with his motor vehicle? It is impossible for the Legislature to define every instrument capable of causing death by reckless action in order to satisfy due process requirements. It is doubtful that the ordinary person not trained in legal matters would know the exact statutory section for the offense and its elements. This ordinary person is expected only to have some notion that his acts are punishable. Therefore, this court holds that due process has been met because a person of ordinary intelligence surely must have some notion that if he recklessly operates a motor vehicle and causes a fatal accident, his conduct would be punished by the criminal laws of the State.
Defendant's motion to dismiss the indictment is denied.