202 N.J. Super. 336 (1985)
495 A.2d 132
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MALCOLM D. MILLIGAN, A/K/A DOUGLAS MILLIGAN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 1985.
Decided July 2, 1985.
*337 Before Judges KING, DEIGHAN and BILDER.
Joseph A. Falcone, Passaic County Prosecutor, attorney for appellant (Steven E. Braun, Assistant Prosecutor, on the brief).
Bianchi & Casale, attorneys for respondent (Angelo R. Bianchi, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
The issue in this case is whether the existence of the death by auto statute, N.J.S.A. 2C:11-5, precludes a prosecution for manslaughter under N.J.S.A. 2C:11-4(b)(1). The charge *338 against defendant stems from his alleged reckless and intoxicated use of a motor vehicle on May 22, 1984 in West Milford Township, Passaic County, which caused the death of Edward Gamble. We conclude, after examination of the legislation and its history, that a homicide resulting from reckless driving may only be prosecuted under N.J.S.A. 2C:11-5, the death by auto provision. We therefore affirm the Law Division order dismissing the indictment without prejudice to reindict under the appropriate statute.
Initially defendant was charged in a complaint with causing death by auto in violation of N.J.S.A. 2C:11-5. The grand jury then returned an indictment charging him with manslaughter in violation of N.J.S.A. 2C:11-4(b)(1) and no-billed the death by auto charge.
The subsection of the Code of Criminal Justice under which defendant was indicted provides
a. Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
b. Criminal homicide constitutes manslaughter when:
(1) It is committed recklessly; or
(2) A homicide which would otherwise be murder under section 2C:11-3 is committed in the heat of passion resulting from a reasonable provocation.
c. Aggravated manslaughter is a crime of the first degree. Manslaughter is a crime of the second degree. [N.J.S.A. 2C:11-4].
The language pertinent to our problem is: "criminal homicide constitutes manslaughter when ... (1) it is committed recklessly." As a second-degree offense, a conviction for reckless manslaughter carries a presumption of imprisonment, N.J.S.A. 2C:44-1(d), for a term of five to ten years, N.J.S.A. 2C:43-6(a)(2); where a prison term is imposed, the presumptive sentence is seven years. N.J.S.A. 2C:44-1(f)(1).
The Law Division judge held that defendant could only be prosecuted under the death by auto section of the Code which at the time of the offense charged provided
a. Criminal homicide constitutes death by auto when it is caused by driving a vehicle recklessly.

*339 b. Death by auto is a crime of the fourth degree and notwithstanding the provisions of 2C:43-2, the court may not suspend the imposition of sentence on any defendant convicted under this section who was operating the vehicle under the influence of an intoxicating liquor, narcotic, hallucinogenic or habit-producing drug and any sentence imposed under this section shall include either a fixed minimum term of 120 days imprisonment during which the defendant shall be ineligible for parole or a requirement that the defendant perform a community-related service for a minimum of 120 days.
c. For good cause shown the court may, in accepting a plea of guilty under this section, order that such plea not be evidential in any civil proceeding. [N.J.S.A. 2C:11-5].
As a fourth-degree offense at the time defendant was charged, death by auto carried a presumption of a noncustodial sentence (if alcohol or drugs were not involved), N.J.S.A. 2C:44-1(e); if imprisonment was imposed the term could be up to 18 months, N.J.S.A. 2C:43-6(a)(4), with a presumptive sentence of nine months, N.J.S.A. 2C:44-1(f). Since the time of this offense, N.J.S.A. 2C:11-5 has been amended to elevate death by auto to crime of the third degree, L. 1984, c. 212, effective December 10, 1984, which carries a presumptive noncustodial sentence, a sentencing range of three to five years and a presumptive sentence in the event of imprisonment of four years. N.J.S.A. 2C:44-1(e); N.J.S.A. 2C:43-6(a)(3); N.J.S.A. 2C:44-1(f)(1).
The term "recklessly," used in both the manslaughter section and death by auto section, is defined in the "General Principles of Liability" section of the Code as follows.
A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the act or his conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. "Recklessness", "with recklessness" or equivalent terms have the same meaning. [N.J.S.A. 2C:2-2(b)(3)].
Thus, the elements of manslaughter and death by auto are really identical where the instrumentality is a motor vehicle. In reaching the conclusion that an indictment may be returned for death by automobile alone, the Law Division judge acknowledged that the existence of a specific statute does not preclude *340 prosecution under a general statute unless a legislative intent to limit the prosecution to the specific statute is shown by an inconsistency between the two, making it impossible to give them concurrent operative effect. State v. Gledhill, 67 N.J. 565, 579-580 (1975). The judge recognized that both statutes should be given effect if reasonably possible and that legislative intent of mutual exclusivity must be manifest and admit of no other reasonable interpretation. Ibid. The judge concluded that the reasoning of State v. Bott, 53 N.J. 391 (1969) (Legislature's separate treatment of the crimes of receiving stolen goods and autos), was applicable to N.J.S.A. 2C:11-5 because death by auto has been treated separately since 1935, despite the 1971 recommendation of the New Jersey Criminal Law Revision Committee that the special section on vehicular homicide be abandoned in deference to a general section dealing with criminally negligent homicide. See Volume II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission 166-167 (1971). Judge Martin of the Law Division stated in his oral opinion
It is apparent that the Legislature has followed a consistent course of conduct since first enacting a death by auto statute. The Legislature has consistently and even in the face of a specific recommendation from the Criminal Law Revision Commission, enacted and maintained a specific "death by auto" provision. This consistency, together with the requisite standard of acting recklessly as a basis for conduct evaluation, clearly evidences that when a person recklessly operates a vehicle, a prosecution under 2C:11-5 is mandated as opposed to one under the general manslaughter statute, 2C:11-4. Except for punishment possibilities, there is no legal logic for the State's position in view of the legislative history. In fact, the Legislature has recently again reviewed the death by auto statute regarding a change in penalty provisions. [2C:11-5, death by auto, formerly a fourth degree crime has recently been increased to a third-degree offense. 2C:11-4, manslaughter, is a second-degree offense], and did not change the culpability requirement nor merge or repeal it is additional legislative history that the Legislature intended this statute to be a specific offense, not a general one under the manslaughter statute. [Matter in brackets in original].
Judge Martin also correctly observed that if the evidence shows "conduct with a culpability level beyond that of recklessness, the State may proceed to charge the offenses of aggravated manslaughter [N.J.S.A. 2C:11-4(a)] and even murder, [N.J.S.A. *341 2C:11-3] if the conduct is purposely or knowingly accomplished with an automobile."
On this appeal the State argues that the language and legislative history of the manslaughter and death by auto statutes show no repugnancy or incompatibility between them. More particularly the State argues that the Legislature's purpose in enacting the first death by auto statute in 1935 was to make it easier to obtain convictions, because grand juries were reluctant to indict for manslaughter, not to replace manslaughter as an indictable crime where reckless use of an automobile resulted in a death. Since the language of the original 1935 death by auto statute was codified at N.J.S.A. 2A:113-9 and then carried over into the Code in 1978, the State argues that the legislative intent has not changed. The State also contends that the mention of a manslaughter prosecution for reckless driving in Davis v. Automobile Assn. of N.J., 124 N.J.L. 364 (Sup.Ct. 1940), a case which decided an issue of insurance coverage, is some evidence that prosecutions for manslaughter continued after the passage of the death by auto statute in 1935. The State further contends that State v. Bott, 53 N.J. 391 (1969), is distinguishable because the subsequent specific legislation regarding stolen autos involved in that case provided for a greater penalty and the Court thus concluded that prosecutions under the general receiving statute, with resultant lesser penalties, would frustrate the Legislature's intent of treating the receipt of stolen automobiles as a particular social evil to be combatted by specific legislation. The State urges that here the Legislature chose to provide a lesser penalty for death by auto in order to insure that a reckless vehicular death be punished in some fashion as opposed to not at all. Finally, the State suggests that there was a difference in the degree of defendant's culpability in the case before us from that provided for in the death by auto statute because here defendant was warned that he should not drive and thus his intent exceeded a "conscious disregard of a substantial and unjustifiable risk." N.J.S.A. 2C:2-2(b)(3).
*342 Defendant responds by asserting that a specific statute must supercede a general one which overlaps the same conduct, citing State v. Serrano, 53 N.J. 356 (1969), and State v. Bott, supra. Regarding the State's attempt to distinguish State v. Bott, defendant argues that nowhere in that decision does the Court say that the principle is limited to situations where the specific statute provides a harsher penalty than the general statute. In sum, defendant argues that the present prosecution frustrates the legislative intent that reckless vehicular homicide be prosecuted under the specific statute created for that purpose and that the language of N.J.S.A. 2C:11-5 admits no other reasonable interpretation than its substitution for N.J.S.A. 2C:11-4(b), in this circumstance, because the Legislature added the element of the automobile. Defendant discounts the State's assertion of any higher degree of culpability in this case than that dealt with in the death by auto statute because the conduct prohibited in both the manslaughter and the death by auto statutes is recklessness. Defendant argues that the activity alleged in the present indictment[1] is precisely that contemplated by the Legislature in adopting the death by auto statute.
Of the reported cases dealing with N.J.S.A. 2C:11-5 and its predecessors, N.J.S.A. 2A:113-9 and R.S. 2:138-9, only one deals with the issue presented here: State v. Potts, 200 N.J. Super. 488 (Law Div. 1985). The other reported opinions deal with such issues as the sufficiency of the proofs to sustain convictions under the death by auto statute, the elements of the offense and double jeopardy issues. See e.g., In re Lewis, 11 N.J. 217 (1953); State v. Donley, 85 N.J. Super. 127 (App.Div. 1964); State v. Oliver, 37 N.J. Super. 379 (App.Div. 1955); State v. Shoopman, 20 N.J. Super. 354 (App.Div. 1952), aff'd 11 N.J. 333 (1953); State v. Elliot, 23 N.J. Super. 311 (App.Div. 1952), certif. den. 12 N.J. 247 (1953); State v. Diamond, 16 N.J. Super. 26 (App.Div. 1951); State v. Gooze, 14 N.J. Super. 277 (App. *343 Div. 1951); State v. Feldman, 30 N.J. Super. 600 (Cty.Ct. 1954); State v. Neri, 10 N.J. Super. 224 (Cty.Ct. 1950); State v. Hedinger, 126 N.J.L. 288 (Sup.Ct. 1941), aff'd o.b. 127 N.J.L. 564 (E. & A. 1942); State v. Linarducci, 122 N.J.L. 137 (Sup.Ct. 1939), aff'd o.b. 123 N.J.L. 228 (E. & A. 1939).
In the recently-decided State v. Potts defendant was allegedly intoxicated when he drove his vehicle through a stop sign that he knew about and collided with another vehicle, killing both his passenger and the driver of the other vehicle. Potts was indicted on two counts of aggravated manslaughter under N.J.S.A. 2C:11-4(a), two counts of manslaughter under N.J.S.A. 2C:11-4(b), and two counts of death by auto under N.J.S.A. 2C:11-5. He then moved to dismiss the manslaughter and aggravated manslaughter counts of the indictment on the grounds that a reckless killing by auto cannot fall within those statutory provisions and must be limited to prosecution under N.J.S.A. 2C:11-5, death by auto. Ibid. The Law Division judge held that defendant could be indicted for aggravated manslaughter and either manslaughter or death by auto.
In reaching this conclusion the judge noted that an indictment for aggravated manslaughter under N.J.S.A. 2C:11-4(a) presented no problem because that section of the Code adds the element of "manifesting extreme indifference to human life," which is not found in either the manslaughter or death by auto provisions. More germane to the issue in the present case, the judge concluded that defendant could be indicted under either the manslaughter or the death by auto statute, despite their identical elements, because where "the facts fit both, the State has the right to elect which statute it will use in its prosecution, absent a clear legislative intent to the contrary," 200 N.J. Super. at 493, citing State v. Cox, 150 N.J. Super. 599, 606 (Law Div. 1977), aff'd o.b. 160 N.J. Super. 28 (App.Div. 1978); State v. Drake, 79 N.J. Super. 458, 462 (App.Div. 1963); State v. Johnson, 67 N.J. Super. 414, 419-422 (App.Div. 1961). The judge reviewed *344 the legislative history of the death by auto statute since 1971 and concluded that
It is an absurdity to conclude that the Legislature intended to limit criminal homicide prosecutions to N.J.S.A. 2C:11-5 simply because the instrumentality causing the death was a vehicle instead of another device which in the manner it is used is known to be capable of producing death or serious bodily injury. N.J.S.A. 2C:11-1(c). [State v. Potts, 200 N.J. Super. at 493].
The judge found it significant that in State v. Parker, 198 N.J. Super. 272, 279 (App.Div. 1984), this court held that a driver who recklessly causes an accident resulting in serious bodily injury to another may be charged with aggravated assault under N.J.S.A. 2C:12-1(b)(1), and he posed the following question.
If a driver who recklessly causes an accident resulting in serious bodily injury to another person may be charged with a criminal offense under N.J.S.A. 2C:12-1(b)(1), a second degree offense, as well as charged with a motor vehicle violation, does it not logically follow that a driver who recklessly causes an accident resulting in another's death may similarly be charged with a criminal offense carrying a penalty at least equal to the penalty imposed for causing serious bodily injury? [State v. Potts, 200 N.J. Super. at 493].
The judge in State v. Potts therefore concluded that where the reckless and drunken use of a vehicle results in homicide the State may charge either manslaughter, N.J.S.A. 2C:11-4(b), or death by auto, N.J.S.A. 2C:11-5.
The controlling principles on this subject were set forth by the Supreme Court in State v. Gledhill, supra. In Gledhill the question was whether a defendant who uttered a false or forged credit card with intent to defraud may be prosecuted under the general forgery statute, then N.J.S.A. 2A:109-1(b), or whether he could only be prosecuted under a section of the Credit Card Act, N.J.S.A. 2A:111-43. 67 N.J. at 568. The Credit Card Act contained a provision that the Act "shall not be construed to preclude the applicability of any other provision of the criminal law of this State which presently applies or may in the future apply to any transaction which violates this act, unless such provision is inconsistent with the terms of this act." N.J.S.A. 2A:111-50. In deciding the issue the Court stated

*345 In our view, the word "inconsistent" as used in N.J.S.A. 2A:111-50 calls for application of the same test as is applicable to a determination whether a later statute impliedly repeals an earlier one  is the subsequent statute "plainly repugnant to the former and * * * designed to be a complete substitute for the former," Goff v. Hunt, 6 N.J. 600, 606 (1951), so that it is impossible to give the two concurrent operative effect?
Two statutes are not inconsistent merely because they overlap in prohibiting the same act. Both laws "should be given effect if reasonably possible. * * * The legislative intention to repeal must be manifest; the language must admit of no other reasonable interpretation." State v. States, supra, 44 N.J. [285] at 291].
Applying that test we are satisfied that the provisions of the forgery statute are not inconsistent with the provisions of the credit card statute section, N.J.S.A. 2A:111-43.
[State v. Gledhill, supra, 67 N.J. at 579-580].
Specific examples of the application of this principal include State v. Cox, 150 N.J. Super. 599, 606-608 (Law Div. 1977), aff'd 160 N.J. Super. 28 (App.Div. 1978), which involved the general fraud statute and a specific statute dealing with electric meter tampering; State v. Drake, 79 N.J. Super. 458, 462 (App.Div. 1963), which involved the general statute prohibiting obtaining money by false representations and a specific statute proscribing false statements in connection with obtaining unemployment benefits; and State v. Johnson, 67 N.J. Super. 414, 419-422 (App.Div. 1961), which involved kidnapping and abduction. In each of those cases the courts found no inconsistency in the overlapping statutes and held that prosecutors could proceed under either.
The principles enunciated in State v. Gledhill, however, do not undercut the precedential value of State v. Bott, supra. There the Supreme Court reversed a trial court's denial of defendant's motion to dismiss an indictment under the general receiving stolen property statute and held that an indictment for receiving a stolen motor vehicle could only lie under the specific statute dealing with such conduct. After reviewing the legislative history of the two statutes, the Court stated
In view of all the circumstances discussed, we believe the Legislature consciously and deliberately established the offense of receiving a stolen motor vehicle knowing it to be stolen, as a separate and distinct crime from N.J.S. 2A:139-1. The omnibus language of N.J.S. 2A:139-1, which on its face would seem to be *346 broad enough to encompass receiving stolen automobiles, dates back at least to 1796, thus long antedating such vehicles. With the advent of automobiles in substantial numbers by 1921, and their unusual appeal as an object of theft, the Legislature by the clearest kind of implication withdrew the associated offense of knowingly receiving stolen vehicles from the almost unlimited scope of the ancient statute, and undertook to deal with it independently and punitively in a manner designed to deter its particular public evil. See State v. Hotel Bar Foods, 18 N.J. 115, 128-129 (1955); Goff v. Hunt, 6 N.J. 600, 607 (1951). The maximum punishment that can be imposed for violation of the omnibus receiving statute is seven years imprisonment or a $2,000 fine or both. The maximum prescribed for violation of N.J.S. 2A:139-3 is ten years imprisonment or a $5,000 fine or both. Thus the legislative will could be frustrated by indicting an accused under N.J.S. 2A:139-1. Such an indictment would prevent imposition of the longer sentence provided under N.J.S. 2A:139-3. Accordingly, we hold the view that the charge of knowingly receiving a stolen motor vehicle must be prosecuted under the specific statute, N.J.S. 2A:139-3, and that an indictment under N.J.S. 2A:139-1 is technically objectionable. [53 N.J. at 402].
From this we see that the Court thought important not only the fact that the Legislature treated stolen motor vehicles separately but that a primary consideration in the Court's mind was possible frustration of the legislative will by prosecuting such offenses under a statute which carried lesser penalties. The distinction drawn by the State in the present case may appear to be well taken because death by auto carries a less severe penalty than manslaughter, but upon closer examination of N.J.S.A. 2C:11-5, the distinction evaporates.
In our view both the legislative history of the death by auto statute and the probable results of prosecuting such a crime as manslaughter under N.J.S.A. 2C:11-4(b) dictate the conclusion that the Legislature intended prosecutions only under N.J.S.A. 2C:11-5 where death results from reckless driving.
As pointed out by the trial judge in this case, before 1935 persons causing death by careless driving were charged with manslaughter. Note, "N.J. Reckless Driving Statute  Wantonness", 6 Rut.L.Rev. 466 (1952). An example of this may be found in State v. Blaine, 104 N.J.L. 325, 327-328 (E. & A. 1928), where the former Court of Errors and Appeals stated
In this second class of cases the rule is a broad one, as it regards as criminal negligence any act or omission done or left undone, as the case may be, in reckless disregard of the life or safety of another.... Such negligence is often described as "gross" negligence, the word "gross" in this collocation implying *347 an indifference to consequences.... Such negligence may be, and often is, the result of intoxication, but may well exist without it. [Id. at 327-328].
In 1935 the Legislature enacted New Jersey's first death by auto statute, as "A Supplement to an act entitled `An act for the punishment of crimes' (Revision of 1898), approved June fourteenth, one thousand eight hundred and ninety-eight." L. 1935, c. 282. In a 1964 opinion Judge Goldmann described the legislative history of this provision as follows
An examination of the legislation which led to R.S. 2:138-9, now N.J.S. 2A:113-9 is not inappropriate. The statute was the result of Senate Bill No. 77 of the 1935 Legislature whose purpose, set out in the Statement accompanying the bill, was to change the designation of the crime of manslaughter to "involuntary homicide" in vehicle cases, and to make the penalty lighter than for manslaughter, "in order to overcome the reluctant on the part of juries to indict and convict in cases of death by vehicle." The act was intended to make it easier to obtain convictions in such cases and to act as a deterrent to reckless operators of vehicles. The legislation was proposed by the Commissioner of Motor Vehicles. See the 28th Annual Report of the Commissioner to the Legislature for the year 1933 (State Library 1974.901 M71). As originally introduced, the bill provided that any person who, by operation of any vehicle "in a culpably negligent manner, but not willfully or wantonly, occasions the death of another person" is guilty of the crime of involuntary homicide and, upon conviction, shall be punishable by a prison term not exceeding three years or by a fine of not more than $1,000, or both.
After a period of study, the bill was supplanted by a Committee Substitute which read, simply, that "Any person who shall cause the death of another by recklessly driving any vehicle shall be guilty of a misdemeanor." (Italics ours) The change from driving in a "culpably negligent manner" to "recklessly driving" indicates the trend of the legislative thinking.
The Second Official Copy Reprint of the Committee Substitute added a proviso that it shall be unlawful to use or offer in evidence, in any civil action brought to recover damages arising out of the fatal accident, the record of any judgment of conviction obtained under the proposed act. The Third Official Copy Reprint of the Committee Substitute replaced the phrase "by recklessly driving" with the language "by driving any vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others." This became the language of L. 1935, c. 282, and was carried over into the Revision of 1937 as R.S. 2:138-9, predecessor of the present statute.
The history of Senate 77 shows that the present language stems from the Legislature's concern with reckless driving resulting in death, transmuted by the Committee Substitute into driving "carelessly and heedlessly in willful or wanton disregard of the rights or safety of others."
[State v. Donley, supra, 85 N.J. Super. at 133-135; emphasis in original].
*348 The legislative history as described by Judge Goldmann does not evince, as argued here by the State, an intent simply to provide prosecutors with an additional tool. While one of the purposes of the Act was "to make the penalty lighter than for manslaughter, `in order to overcome the reluctance on the part of juries to indict and convict in cases of death by vehicle'," another purpose "was to change the designation of the crime of manslaughter to `involuntary homicide' in vehicle cases." Id. at 134. Thus, it is not surprising that other than State v. Potts, supra, we have been unable to find any reported case subsequent to 1935 in which a reckless vehicular homicide was prosecuted as manslaughter. While Davis v. Automobile Assn. of N.J., supra, 124 N.J.L. at 366, mentions a possible prosecution for manslaughter, the issue before the former Supreme Court in that 1940 case involved the contractual obligations of an insurer and, as conceded by the State in its brief in the present case, the court was not called upon to discuss the sufficiency of the complaint. Moreover, there is no indication in the opinion as to whether the driver was ever even indicted, let alone convicted, of manslaughter. Significantly, the opinion in Davis observes that "under the present law the charge that is usually made is contained in R.S. 2:138-9," the vehicular homicide statute. Ibid.
We note that the description of the elements of the crime both before and after the passage of the death by auto statute in 1935 are remarkably similar. Compare the statement of the Court of Errors and Appeals in State v. Blaine, supra, 104 N.J.L. at 328, that gross negligence in a manslaughter prosecution implies "an indifference to consequences," with Justice Brennan's statement in 1953 that
The offense condemned by R.S. 2:138-9 may be committed by the driver of a motor vehicle who causes the death of another when there inheres in his driving the high probability of causing harm because of conditions known to him which actually impair, or potentially have the capacity to impair, his faculties for vigilence and care.... [C]onduct which otherwise would be merely negligent becomes, by reason of reckless disregard of the safety of others, a willful or wanton wrong. [In re Lewis, supra, 11 N.J. at 221-222].
*349 See also, State v. Oliver, supra, 37 N.J. Super. at 381, a case involving an indictment under N.J.S.A. 2A:113-8, where the court quoted the above language from Lewis.
In the codification of the statutes, R.S. 2:138-9 was carried over in its entirety into N.J.S.A. 2A:113-9. In 1971 the Criminal Law Revision Commission studying New Jersey's criminal laws recommended dropping the death by auto statute and substituting in its stead a general provision regarding negligent homicide as new section 2A:11-5[2] of the proposed New Jersey Penal Code. Final Report of the New Jersey Criminal Law Revision Commission, The New Jersey Penal Code, Volume I: Report and Penal Code 51 (1971). The Commission explained
While we appreciate the practical value of the special provision for vehicular homicides, we think it to be unnecessary as the Code is drawn. The separation from manslaughter is accomplished by treating criminally negligent homicide as a distinct offense of lower grade. If the evidence does not make out a case of criminal negligence, we see no reason for creating liability for homicide, as distinguished from any traffic offense that is involved. [Id., Vol. II: Commentary at p. 167].
The Legislature, however, did not accept the recommendation of the Commission, and instead of adopting a provision covering criminal negligence, reenacted N.J.S.A. 2A:113-9, in its entirety, as N.J.S.A. 2C:11-5. L. 1978, c. 95, § 2C:11-5. In this version death by auto was designated as a fourth-degree offense under the Code. Ibid. In 1981 the Legislature sought to amend the death by auto statute contained in the Code by, in the sponsor's words, "reducing the standard of conduct required for conviction of the crime of death by auto from willful and wanton disregard to wanton and reckless disregard." The Senate Judiciary Committee statement to S. 1417 stated that the bill would establish the following standard: "That the *350 vehicle was driven `recklessly, or negligently under circumstances manifesting and extreme indifference to human life'." In returning the bill to the Senate for reconsideration with his objections, Governor Byrne expressed concern that negligence could, under certain circumstances, sustain a criminal conviction. Further, the required proof of "willful or wanton disregard" created, in the Governor's mind, "an inherent contradiction in the definition of negligence," in that it would "only duplicate the standard of recklessness already provided for by this bill." Thus he recommended inclusion of the term "recklessly" and omission of the phrase "negligently in a willful or wanton disregard of the rights and safety of others." The Legislature accepted this recommendation and enacted N.J.S.A. 2C:11-5(a), in its present form. L. 1981, c. 312, § 1.
Since the term "recklessly," added to the death by auto statute in 1981, is the same term used in the manslaughter statute, N.J.S.A. 2C:11-4(b), and is defined in the Code at N.J.S.A. 2C:2-2(b)(3), it is clear that the Legislature continued the course set in 1935 of treating death by auto as a separate crime, distinct and apart from manslaughter. Decisive in this regard was the additional amendment to N.J.S.A. 2C:11-5(b) prohibiting the suspension of a sentence imposed upon a conviction under this section where the defendant operated the vehicle under the influence of liquor or drugs, and requiring the court to sentence the defendant to a fixed minimum term of 120 days of imprisonment or community-related service. L. 1983, c. 39. Under N.J.S.A. 2C:44-1(d) a conviction of manslaughter carries a presumption of imprisonment, "unless having regard to the character and condition of the defendant it [the court] is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others." N.J.S.A. 2C:43-2(b) explicitly provides that a court "may suspend the imposition of sentence on a person who has been convicted of an offense." Thus, a defendant who has killed another by the reckless and intoxicated operation of his vehicle might receive a suspended sentence if convicted of manslaughter *351 under N.J.S.A. 2C:11-4(b). This would frustrate the intent of the Legislature, expressed in N.J.S.A. 2C:11-5(b), that such defendants never received a suspended sentence and that they serve a minimum term of 120 days imprisonment or community service. The minimum term is one part of the Legislature's ongoing efforts to deal with the problem of drunk driving. See State v. Dyal, 97 N.J. 229, 237 (1984) (state policy "is to rid the highways of drunken drivers"); Kelly v. Gwinnel, 96 N.J. 538, 544-545 (1984) (describing the cost in money and lives of drunken driving and noting the recent strengthening of criminal sanctions); In re Kallen, 92 N.J. 14, 28-29 and n. 7 (1983) (describing legislative efforts to deal with the problem). Moreover, the quite recent amendment upgrading a violation of N.J.S.A. 2C:11-5 from a fourth-degree to a third-degree offense is yet another example of particularized treatment of death by auto by the Legislature. L. 1984, c. 212.
Finally, as to the State's suggestion that defendant's conduct was more aggravated and culpable than "recklessness" in the present case, we observe that the standard of conduct proscribed in both the death by auto statute and the manslaughter statute is identical; that is, "recklessly." The true difference in culpability lies in the distinction between recklessness, as used in the manslaughter and death by auto statutes, on the one hand, and recklessness "under circumstances manifesting extreme indifference to human life," as set forth in N.J.S.A. 2C:11-4(a), covering aggravated manslaughter. In State v. Curtis, 195 N.J. Super. 354, 364 (App.Div. 1984), this court explained the distinction between manslaughter and aggravated manslaughter as follows.
We envision that the Legislature intended that the degree of risk in reckless manslaughter be merely possibility of death. In aggravated manslaughter, however, the additional element that death be caused "under circumstances manifesting extreme indifference to human life" elevates the risk level from a mere possibility to a probability.
See also State v. Parker, 198 N.J. Super. at 280-281. We further note that the prosecutor charged the grand jury on the law of aggravated manslaughter but that the grand jury chose *352 not to return an indictment for that crime under N.J.S.A. 2C:11-4(a).
We affirm the dismissal of the indictment brought under N.J.S.A. 2C:11-4(b)(1) without prejudice to the State to seek an indictment under N.J.S.A. 2C:11-5.
NOTES
[1] That defendant "did recklessly cause serious bodily injury to Edward Gamble resulting in his death."
[2] The proposed section was

"Section 2C:11-5. NEGLIGENT HOMICIDE.
a. Criminal homicide constitutes negligent homicide when it is committed negligently under circumstances manifesting extreme indifference to the value of human life.
b. Negligent homicide is a crime of the third degree."